RECEIVED
MAY 21 2008
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MBIA INC.,                                              :          ECF CASE

                              Plaintiff,            :          08 Civ. 4313 (RMB) (DFE)

            -against-                                   :          **AMENDED COMPLAINT**

FEDERAL INSURANCE COMPANY and        :          **JURY TRIAL DEMANDED**
ACE AMERICAN INSURANCE COMPANY,

                                                          :

                              Defendants.        :

                                                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

        Plaintiff MBIA Inc. ("MBIA") by and through its attorneys, Howrey LLP, as and for its

Complaint, alleges as follows:

### NATURE OF THE CASE

    1.      This is a civil action for breach of contract and for declaratory judgment that

MBIA brings against Federal Insurance Company ("Federal") and ACE American Insurance

Company ("ACE") (collectively "Defendants") under primary and excess Directors and Officers

("D&O") liability insurance policies that Defendants sold to MBIA.  MBIA seeks to enforce its

rights to coverage under Defendants' D&O insurance policies for the following:  (i) MBIA's

total defense costs arising out of certain investigations brought by the Securities and Exchange

Commission ("SEC") and the New York Attorney General ("NYAG") (collectively the

"regulators"); (ii) the costs of an "Independent Consultant" that MBIA was legally obligated to

pay pursuant to settlements with the regulators; (iii) MBIA's total defense costs arising out of

certain shareholder derivative actions filed against certain of MBIA's directors and officers; and

(iv) any loss (including any defense costs or legal liability) arising out of a class action filed

against MBIA by certain purchasers of MBIA's stock.  The regulatory investigations, the shareholder derivative actions, and the class action (collectively "the Underlying Claims") all allege violations of federal and/or state securities law.

2.      The terms of the D&O insurance policies that Defendants sold to MBIA obligate Defendants to indemnify MBIA for both defense costs and any legal liability incurred in connection with the Underlying Claims.  Notwithstanding the fact that MBIA already has incurred defense costs and legal liability in connection with the Underlying Claims that greatly exceeds the $15 million limit of Federal's policy, Federal contends that it only has limited coverage obligations with respect to the Underlying Claims and has refused to provide coverage to MBIA for a substantial portion of those defense costs and legal liability.  In addition, notwithstanding the fact that MBIA already has incurred defense costs and legal liability in connection with the Underlying Claims that impacts ACE's first-layer excess policy, ACE has refused to provide MBIA with any coverage to date.

3.      Both Federal and ACE unreasonably have refused to consent to MBIA's settlement of the class action, thereby exposing MBIA to further defense costs and greater potential legal liability.

4.      Accordingly, MBIA seeks damages for Defendants' breaches of their contractual obligations to indemnify MBIA in full for the defense costs, as well as the cost of the Independent Consultant, that MBIA has incurred to date with respect to the Underlying Claims. MBIA also seeks a judgment declaring that Defendants have an obligation to indemnify MBIA for all defense costs that MBIA has incurred, or will incur, as well as any legal liability that MBIA incurs with respect to settlements, judgments, or damages in connection with the class action.

2

**THE PARTIES**

5.      Plaintiff MBIA is a corporation organized under the laws of the State of Connecticut with its principal place of business at 113 King Street, Armonk, New York, 10504.

6.      Defendant Federal is a corporation organized under the laws of the State of Indiana with its principal place of business at 15 Mountainview Road, Warren, New Jersey, 07059.  Federal is doing business in New York or has transacted business in New York out of which the claims arise.

7.      Defendant ACE is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 436 Walnut Street, Philadelphia, PA, 19106.  ACE is doing business in New York or has transacted business in New York out of which the claims arise.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between MBIA and both Defendants and the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

9.      This Court has subject matter jurisdiction over the declaratory judgment action pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

10.     This Court has personal jurisdiction over the Defendants pursuant to Federal Rule of Civil Procedure 4(e) and (h), and §§ 301 and 302(a)(1) of the New York Civil Practice Law and Rules.  This action arises out of contracts for insurance between MBIA and Defendants that were performable in whole or in part in New York.  In addition, this action arises out of Defendants' transaction of business in New York, specifically, Defendants' sale and issuance of contracts of insurance to MBIA in New York.

3

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (c).

## THE SUBJECT INSURANCE POLICIES

12.     Federal sold to MBIA Executive Liability and Indemnification Policy No. 7023-4658 ("Federal Policy") for the period February 15, 2004 to February 15, 2005.  *See* Exhibit A attached hereto.

13.     The Federal Policy has a $15 million liability limit, subject to a $2.5 million deductible, and provides:  (i) coverage to MBIA's directors and officers for "Loss" arising from alleged "Wrongful Acts"; (ii) coverage to MBIA for any indemnification that MBIA must pay to its directors and officers for "Loss" arising from alleged "Wrongful Acts"; and (iii) direct "entity" coverage to MBIA for "Securities Loss" arising from a "Securities Claim."

14.     The Federal Policy defines a "Loss" as, *inter alia*, "the total amount which any Insured Person becomes legally obligated to pay on account of each Claim and for all Claims . . . made against them for Wrongful Acts for which coverage applies, including, but not limited to, damages, judgments, settlements, costs and Defense Costs."

15.     The Federal Policy is a "claims made" policy, meaning that it is triggered by a Claim first made against an insured during its policy period for a Wrongful Act allegedly committed before or during its policy period.

16.     The Federal Policy defines a "Claim" as:

    a.     a written demand for monetary damages;

    b.     a civil proceeding commenced by the service of a complaint or similar pleading;

    c.     a criminal proceeding commenced by a return of an indictment;

    d.     a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document, or

4

   e. an informal administrative or regulatory proceeding or inquiry commenced by the filing of a notice of charges, formal or informal investigative order or similar documents, as it relates solely to a Securities Claim,

against any insured Person for a Wrongful Act, including any appeal therefrom.

  17. The Federal Policy defines "Wrongful Act" as "any error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted, or allegedly committed or attempted, by any Insured Person or [MBIA] based upon, arising from, or in consequence of a Securities Transaction."

  18. The Federal Policy considers all "causally connected Wrongful Acts" to be "Interrelated Wrongful Acts."

  19. The Federal Policy defines "Securities Loss" as "the total amount, which any Insured Person, solely or jointly with [MBIA], becomes legally obligated to pay on account of a Securities Claim, including but not limited to damages, punitive or exemplary damages, judgments, settlements, costs and Securities Defense Costs . . . ."

  20. The Federal Policy defines "Securities Claim" as:

   i. a written demand for monetary damages,

   ii. a civil proceeding commenced by the service of a complaint or similar pleading,

   iii. a formal or informal administrative or regulatory proceeding or inquiry commenced by the filing of a notice of charges, formal or informal investigative order or similar document,

   iv. a criminal proceeding commenced by the return of an indictment,

which, in whole or in part, is based upon, arises from or is in consequence of the purchase or sale of, or offer to purchase or sell, any securities of the Organization.

5

21.     The Federal Policy defines "Defense Costs" as "that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the Organization) incurred in defending or investigating Claims and the premium for appeal, attachment or similar bonds." The Federal Policy also has a definition of "Securities Defense Costs" which is substantially the same as the above. Accordingly, for the purposes of simplicity, all references to such costs herein will be merely to Defense Costs.

22.     The Federal Policy states that MBIA has agreed "not to settle any Claim . . . without [Federal's] written consent, which shall not be unreasonably withheld."

23.     ACE sold to MBIA Integrated Excess Insurance Policy No. DOX G21670029 001 ("ACE Policy"). This is a first-layer excess policy that provides coverage for the same period as the Federal Policy. The ACE Policy "follows form" to the Federal Policy and provides an additional $15 million in coverage above the Federal Policy's limit. *See* Exhibit B attached hereto.

24.     The ACE Policy's Limit of Liability section provides that the ACE Policy attaches after the amount of the Underlying Limits has been paid. The ACE Policy also provides, *inter alia*, that if MBIA does not maintain any Underlying Policies, "[ACE] shall not be liable under the policy to a greater extent than it would have been had such Underlying Policies been so maintained." These provisions confirm that ACE's obligation to provide MBIA with coverage under its Policy attaches to any covered Loss that exceeds the Federal Policy's $15 million limit, regardless of whether Federal, itself, has paid those limits.

6

25.    The costs that MBIA has paid in defending the Underlying Claims, as well as the costs of the Independent Consultant, far exceed the Federal Policy's $15 million liability limit and, therefore, also presently reach the ACE Policy.

26.    MBIA has complied with all of the conditions precedent to coverage under the Federal and ACE Policies, including, without limitation, the payment of all premiums to Defendants. Alternatively, any such condition precedent that allegedly has not been fulfilled by MBIA is inapplicable because of waiver, estoppel, excuse, laches, or lack of prejudice.

## BACKGROUND OF THE REGULATORY INVESTIGATIONS

27.    MBIA is the world's largest bond insurer. Bond insurers enhance the safety of municipal and other bonds, making them more appealing to investors, by assuming responsibility for the timely payment of interest and principal if the issuer fails to meet its obligations. MBIA financial guarantee insurance benefits issuers by reducing their cost of borrowing, easing their access to capital and increasing the marketability of their bonds.

28.    MBIA provided financial guarantee insurance on bonds issued by the Delaware Valley Obligated Group of the Allegheny Health, Education and Research Foundation ("AHERF"), a hospital association based in Pittsburgh, Pennsylvania. In 1998, when AHERF defaulted on its payment obligation on more than $250 million in insured bonds, MBIA became obligated to make timely payments of interest and principal on those bonds. In order to help mitigate the impact of the loss to MBIA resulting from that default, MBIA entered into two sets of transactions with three reinsurers.

29.    On March 9, 2001, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony ("Formal Order"), to investigate companies that purchased certain loss-mitigation insurance products.

30.     On November 17, 2004, during the periods of the Federal and ACE Policies, the SEC, pursuant to the Formal Order, served a subpoena on MBIA with respect to the AHERF reinsurance transactions.

31.     The NYAG served MBIA with an identical subpoena on November 18, 2004.

32.     The SEC subsequently issued additional subpoenas with respect to the AHERF investigation and broadened the scope of its investigation beyond the AHERF reinsurance transactions to include other means by which MBIA might have improperly hidden losses in violation of generally accepted accounting principles ("GAAP") and the federal securities laws. Among other things, the SEC broadened its investigation to also include certain of MBIA's transactions with or involving a company named Capital Asset, as well as certain transactions involving aircraft leased by US Airways.

33.     Capital Asset was in the business of purchasing and servicing delinquent tax liens. The SEC investigated MBIA's investment in Capital Asset, as well as financial guarantee policies that MBIA issued with respect to three securitizations of tax liens acquired by Capital Asset.  MBIA's transactions with and involving Capital Asset resulted in losses to MBIA.  The SEC investigated whether MBIA's accounting for and disclosures concerning its transactions with Capital Asset were consistent with GAAP and the federal securities laws.

34.     With respect to US Airways, the SEC investigated a transaction that involved MBIA's remediation with respect to certain Enhanced Equipment Trust Certificates issued by the US Airways 1998-1 Repackaging Trust (the "EETCs") and secured by aircraft leased by US Airways.  MBIA voluntarily paid off the financial guarantee insurance policy it had issued with respect to the EETCs and took effective ownership of the aircraft.  The SEC investigated whether MBIA's accounting for and reporting of this transaction as an investment in the collateral rather

8

than as a loss under its guarantee policy was appropriate under GAAP and/or the federal securities laws.

35.    In January 2007, MBIA entered into formal settlements with the SEC and the NYAG regarding their investigations. Pursuant to those settlements, MBIA became legally obligated to retain and pay the costs of an "Independent Consultant" to take over the investigation concerning whether MBIA's accounting and disclosures with respect to Capital Asset and US Airways were consistent with GAAP and the federal securities laws. The Independent Consultant thereafter conducted an investigation focused on the transactions involving Capital Asset and US Airways.

36.    The Independent Consultant filed its final report on July 24, 2007, in which it concluded that MBIA did not violate GAAP or the federal securities laws in connection with accounting for or disclosure of the Capital Asset or US Airways transactions.

## BACKGROUND OF THE SECURITIES CLASS ACTION AND SHAREHOLDER DERIVATIVE ACTIONS

37.    In addition to the regulatory investigations, MBIA's current and former shareholders filed private lawsuits against MBIA and its directors and officers.

38.    In *In re MBIA Inc. Securities Litigation*, No. 05-CV-03514 (S.D.N.Y. filed Oct. 3, 2005) (the "Class Action"), plaintiffs alleged that MBIA and certain of its directors and officers had engaged in improper accounting practices to artificially inflate MBIA's financial statements and that MBIA and certain of its directors and officers had engaged in a fraudulent scheme to deceive the investing public with respect to the AHERF reinsurance transactions. These plaintiffs sought to represent a class of purchasers of MBIA stock between August 5, 2003 and March 30, 2005.

9

39.    On February 15, 2007, Judge Louis L. Stanton, of the United States District Court for the Southern District of New York, dismissed the Class Action on statute-of-limitations grounds.  Plaintiffs have appealed from that dismissal to the United States Court of Appeals for the Second Circuit.  That appeal is pending.

40.    After the appeal was taken, the class-action plaintiffs made a specific settlement demand on MBIA.  In response to this demand, MBIA determined that it would be appropriate and prudent to consider settlement of those claims.  MBIA sought the consent of Federal and ACE to make a counter-proposal to settle the Class Action.  Both Federal and ACE refused to provide their consent.  Because of Federal's and ACE's refusals, MBIA has not engaged in any further settlement talks with the plaintiffs.

41.    In addition to the Class Action, MBIA shareholders brought two derivative actions against MBIA's directors and officers, *Purvis v. Brown*, No. 20099-05 (N.Y. Sup. Ct., Westchester Cty. filed Nov. 9, 2005) ("*Purvis*") and *Orton v. Brown*, No. 06-CV-3146 (S.D.N.Y. filed Apr. 24, 2006) ("*Orton*") (collectively the "Derivative Actions").  The Derivative Actions alleged, *inter alia*, that MBIA's current and former directors and officers breached their fiduciary duties to MBIA and its shareholders by undertaking, acquiescing in, or approving certain acts related to the reinsurance agreements entered into to mitigate the impact of the loss resulting from the AHERF default and recording or accounting for those transactions.

42.    Following the completion and filing of a report by a special committee of independent directors of MBIA rejecting certain of the claims and concluding that pursuit of the remaining claims was not in the best interests of MBIA and its shareholders, both derivative actions were dismissed pursuant to agreements reached by the parties, with no payment by MBIA and with each side paying its own litigation costs.

10

## FEDERAL'S AND ACE'S DENIALS OF COVERAGE

43.     Federal and MBIA have engaged in discussions regarding Federal's coverage

obligations for more than a year now.  Despite the fact that MBIA has incurred defense costs that

greatly exceed the Federal Policy's $15 million liability limit, Federal has agreed to pay MBIA

only $6.4 million to date, which represents $8.9 million in defense costs that Federal

acknowledges are covered, minus the Federal Policy's $2.5 million deductible.  Federal has

denied that it has any further obligation to provide coverage to MBIA with respect to the

Underlying Claims.

44.     Federal's coverage denial is premised on the following purported bases:

a.     That the NYAG investigation does not constitute a "Securities Claim" within the
meaning of the Federal Policy's language;

b.     That the Capital Asset and US Airways investigations do not constitute
"Securities Claims" within the meaning of the Federal Policy's language;

c.     The Independent Consultant's costs for which MBIA is liable under the
regulatory settlements are not covered because they do not arise from a Securities Claim and do
not constitute a Loss or a Securities Loss; and

d.     A $200,000 sub-limit applies to certain of the defense costs associated with the
Derivative Actions.

ACE has joined Federal in the above positions.

45.     Also, notwithstanding that defense costs are greater than $15 million and thus

have exceeded the level at which the ACE coverage attaches, thereby obligating ACE to

reimburse MBIA for such costs, ACE has declined to make any payments, arguing that its Policy

will not attach unless and until Federal has paid to MBIA amounts equaling the Federal Policy's

$15 million liability limit.  In other words, according to ACE, it owes MBIA nothing regardless

of whether the total amount of costs and/or legal liability that MBIA incurs exceeds the liability

limit of the Federal Policy, so long as Federal has not paid to MBIA the full amount of the Federal Policy's liability limit.

46.    Defendants' purported bases for denying their coverage obligations with respect to the Underlying Claims are without merit.

47.    With respect to the NYAG investigation, Defendants' principal basis for arguing that it does not constitute a "Securities Claim" is the fact that it was commenced by a subpoena which, according to Defendants, does not constitute a "formal or informal investigative order or similar document" as required under the Federal Policy language.  Defendants are incorrect because, as a matter of general practice, the NYAG does not issue a formal order before commencing an investigation.  In addition, given that a subpoena has the weight of legal compulsion, it certainly should constitute, at a minimum, a "similar document" that commences an investigation within the meaning of the Federal Policy language.  If Defendants were correct in their position, it would render illusory much of the coverage they sold to MBIA because it would mean that MBIA, which has its principal place of business in New York, purchased coverage for Securities Claims that did *not* include securities investigations brought by the NYAG.

48.    With respect to the Capital Asset and US Airways investigations, Defendants argue that those investigations do not constitute "Securities Claims" because they were not commenced by a "formal or informal investigative order or similar document" but rather involved only informal document requests.  In fact, the Capital Asset and US Airways investigations were extensions of the SEC's initial investigation into the AHERF transactions, which Federal acknowledged did, in fact, constitute a "Securities Claim."  Indeed, the SEC has inherent powers to expand any investigation to include additional transactions and all of the

12

investigations that began with the AHERF investigation were based upon the SEC's overriding investigation into whether MBIA had used impermissible means to affect the timing or amount of revenue, expense or loss that MBIA recognized in any particular reporting period. Accordingly, the Capital Asset and US Airways investigations were commenced by the same document that commenced the AHERF investigation and, therefore, constitute Securities Claims within the meaning of the Federal Policy language. Furthermore, pursuant to the Federal Policy's plain language, a "Securities Claim" may be commenced formally or *informally* by an investigative order or a "similar document." Therefore, even if the SEC's investigation into the Capital Asset and US Airways transactions began merely with informal document requests, those investigations still fall within the scope of Federal's very broad policy language.

49.     The Defendants have raised several purported bases for denying coverage for the Independent Consultant's costs including: (i) that they relate to the Capital Asset and US Airways transactions which, as set forth above, Defendants argue are not covered; (ii) they purportedly do not constitute an "administrative or regulatory proceeding or inquiry" as required under the Federal Policy language; and (iii) MBIA purportedly is barred from seeking coverage for the Independent Consultant's costs under the terms of its settlement with the regulators. Defendants are incorrect with respect to all of these positions. First, as set forth above, the Capital Asset and US Airways transactions are, in fact, "Securities Claims" within the meaning of the Federal Policy language. Second, the Independent Consultant's work is part of a regulatory proceeding because the regulators imposed on MBIA the legal obligation to retain, and pay for, the Independent Consultant to continue the regulators' investigations. Third, the regulatory settlements do not bar MBIA from seeking insurance coverage for the Independent Consultant's costs.

13

50.     With respect to the Derivative Actions, Defendants contend that much of MBIA's defense costs are not actually "Defense Costs" but, rather, merely are "Investigation Costs" for which there is a $200,000 sub-limit under the Federal Policy.  In reality, although defense counsel did investigate the merits of the shareholders' derivative *demands* prior to the filing of the lawsuits, defense counsel began litigation defense work once the shareholders filed the two Derivative Actions.    Specifically, once *Purvis* was filed in November 2005, all of the associated fees, costs, and expenses that MBIA incurred thereafter were Defense Costs within the meaning of Defendants' policies.  Likewise, once *Orton* was filed in April 2006, all of the associated fees, costs, and expenses were Defense Costs within the meaning of Defendants' policies.  In short, the vast majority of the costs incurred with respect to the Derivative Actions are covered Defense Costs and are not mere Investigation Costs.

51.     Finally, ACE's position that its policy will not attach unless Federal, itself, pays its full policy limits, even if MBIA's Loss greatly exceeds Federal's limits, runs counter to (i) its own policy language, which indicates that ACE's obligation attaches if a loss exceeds the amount of the underlying insurance, regardless of whether an underlying insurer has paid its policy's limits; (ii) controlling judicial authority; and (iii) public policy.

52.     MBIA explained to Federal and ACE why the above positions are incorrect. Federal and ACE have nevertheless refused to change their coverage positions.

53.     In addition, although Federal has agreed to pay, and has paid, most of MBIA's defense costs incurred in connection with the Class Action, Federal also reserved its rights to ultimately deny coverage to MBIA for all such costs as well as any damages or other costs incurred through settlement or judgment.  ACE has similarly reserved its rights.  Defendants' failure to consent to MBIA's making efforts to settle the Class Action was not reasonable and,

14

given that Defendants have reserved their rights to deny coverage, MBIA has been improperly

exposed to the possibility of having to incur further defense costs as well as the possibility of

incurring a greater legal liability than MBIA would have incurred through settlement.  Based on

Defendants' coverage denials with respect to the regulatory investigations and Derivative

Actions, it is possible, if not likely, that Defendants also will deny coverage for some, if not all,

of any defense costs or any legal liability incurred in connection with the Class Action.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract – Duty to Pay in Full the Total Defense Costs**
**Relating to the SEC and NYAG Investigations**

54.     MBIA repeats and realleges paragraphs 1 through 53, as if set forth fully herein.

55.     The insurance policies that Defendants sold to MBIA obligate Defendants to pay

in full MBIA's total defense costs arising from both the SEC and NYAG regulatory

investigations.

56.     Defendants have breached their contractual and common law obligations to

MBIA by their failure and refusal to fulfill their obligations to, among other things, pay in full

MBIA's total defense costs in the SEC and NYAG regulatory investigations.

57.     As a direct and proximate cause of Defendants' breaches of contract, which

continue to at least the time of the filing of this Complaint, Defendants have deprived MBIA of

the benefits of the insurance contracts, for which MBIA paid substantial premiums.  MBIA has

sustained damages due to Defendants' breaches of contract.

15

## SECOND CLAIM FOR RELIEF
### Breach of Contract – Duty to Indemnify for MBIA's Legal Liability to Pay the Costs of the Independent Consultant Required Under the Regulatory Settlements

58.     MBIA repeats and realleges paragraphs 1 through 53, as if set forth fully herein.

59.     The insurance policies that Defendants sold to MBIA obligate Defendants to indemnify and pay in full MBIA's Securities Loss resulting from Securities Claims, including all sums spent in settlements, judgments, or damages in connection with the SEC and NYAG investigations.

60.     Defendants have breached their contractual obligations to MBIA set forth in their insurance policies by their failure and refusal to indemnify MBIA and pay in full the costs of the work performed by the Independent Consultant for which MBIA is legally liable under the terms of MBIA's settlements with the regulators.

61.     As a direct and proximate result of Defendants' breaches of contract, which continue to at least the time of the filing of this Complaint, Defendants have deprived MBIA of the benefits of the insurance contracts, for which MBIA paid substantial premiums.  MBIA has sustained damages due to Defendants' breaches of contract.

## THIRD CLAIM FOR RELIEF
### Breach of Contract – Duty to Pay in Full the Total Defense Costs for the Derivative Actions

62.     MBIA repeats and realleges paragraphs 1 through 53, as if set forth fully herein.

63.     The insurance policies that Defendants sold to MBIA obligate Defendants to pay MBIA in full the total costs of defending certain of its directors and officers in the Derivative Actions.

16

64.     Defendants have breached their contractual obligations to MBIA by their failure and refusal to pay MBIA in full the total costs of defending certain of its directors and officers in the Derivative Actions.

65.     As a direct and proximate result of Defendants' breaches of contract, which continue to at least the time of the filing of this Complaint, Defendants have deprived MBIA of the benefits of the insurance contracts, for which MBIA paid substantial premiums. MBIA has sustained damages due to Defendants' breaches of contract.

### FOURTH CLAIM FOR RELIEF
#### Declaratory Judgment – Duty to Pay in Full the Total Loss Arising From the Class Action

66.     MBIA repeats and realleges paragraphs 1 through 53, as if set forth fully herein.

67.     The insurance policies that Defendants sold to MBIA obligate Defendants to pay in full any Securities Loss or Loss that MBIA incurs in connection with the Class Action, including all defense costs, as well as all damages or other liabilities that may be incurred in connection with settlements or judgments in the Class Action.

68.     Defendants have unreasonably withheld consent for MBIA to pursue a settlement of the Class Action. Defendants also have reserved their rights with respect to the Class Action and have, therefore, refused to acknowledge that, pursuant to the terms of their insurance policies, they must indemnify and pay in full any Securities Loss or Loss MBIA incurs in connection with the Class Action, including all defense costs, as well as all damages or other liabilities that may be incurred in connection with settlements or judgments in the Class Action. Accordingly, an actual and justiciable controversy presently exists between MBIA and Defendants as to whether Defendants must pay in full any Securities Loss or Loss MBIA incurs

50.    With respect to the Derivative Actions, Defendants contend that much of MBIA's defense costs are not actually "Defense Costs" but, rather, merely are "Investigation Costs" for which there is a $200,000 sub-limit under the Federal Policy. In reality, although defense counsel did investigate the merits of the shareholders' derivative *demands* prior to the filing of the lawsuits, defense counsel began litigation defense work once the shareholders filed the two Derivative Actions. Specifically, once *Purvis* was filed in November 2005, all of the associated fees, costs, and expenses that MBIA incurred thereafter were Defense Costs within the meaning of Defendants' policies. Likewise, once *Orton* was filed in April 2006, all of the associated fees, costs, and expenses were Defense Costs within the meaning of Defendants' policies. In short, the vast majority of the costs incurred with respect to the Derivative Actions are covered Defense Costs and are not mere Investigation Costs.

51.    Finally, ACE's position that its policy will not attach unless Federal, itself, pays its full policy limits, even if MBIA's Loss greatly exceeds Federal's limits, runs counter to (i) its own policy language, which indicates that ACE's obligation attaches if a loss exceeds the amount of the underlying insurance, regardless of whether an underlying insurer has paid its policy's limits; (ii) controlling judicial authority; and (iii) public policy.

52.    MBIA explained to Federal and ACE why the above positions are incorrect. Federal and ACE have nevertheless refused to change their coverage positions.

53.    In addition, although Federal has agreed to pay, and has paid, most of MBIA's defense costs incurred in connection with the Class Action, Federal also reserved its rights to ultimately deny coverage to MBIA for all such costs as well as any damages or other costs incurred through settlement or judgment. ACE has similarly reserved its rights. Defendants' failure to consent to MBIA's making efforts to settle the Class Action was not reasonable and,

14

given that Defendants have reserved their rights to deny coverage, MBIA has been improperly

exposed to the possibility of having to incur further defense costs as well as the possibility of

incurring a greater legal liability than MBIA would have incurred through settlement. Based on

Defendants' coverage denials with respect to the regulatory investigations and Derivative

Actions, it is possible, if not likely, that Defendants also will deny coverage for some, if not all,

of any defense costs or any legal liability incurred in connection with the Class Action.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract – Duty to Pay in Full the Total Defense Costs**
**Relating to the SEC and NYAG Investigations**

54.    MBIA repeats and realleges paragraphs 1 through 53, as if set forth fully herein.

55.    The insurance policies that Defendants sold to MBIA obligate Defendants to pay

in full MBIA's total defense costs arising from both the SEC and NYAG regulatory

investigations.

56.    Defendants have breached their contractual and common law obligations to

MBIA by their failure and refusal to fulfill their obligations to, among other things, pay in full

MBIA's total defense costs in the SEC and NYAG regulatory investigations.

57.    As a direct and proximate cause of Defendants' breaches of contract, which

continue to at least the time of the filing of this Complaint, Defendants have deprived MBIA of

the benefits of the insurance contracts, for which MBIA paid substantial premiums. MBIA has

sustained damages due to Defendants' breaches of contract.

64.    Defendants have breached their contractual obligations to MBIA by their failure and refusal to pay MBIA in full the total costs of defending certain of its directors and officers in the Derivative Actions.

65.    As a direct and proximate result of Defendants' breaches of contract, which continue to at least the time of the filing of this Complaint, Defendants have deprived MBIA of the benefits of the insurance contracts, for which MBIA paid substantial premiums.  MBIA has sustained damages due to Defendants' breaches of contract.

### FOURTH CLAIM FOR RELIEF
#### Declaratory Judgment – Duty to Pay in Full the Total Loss Arising From the Class Action

66.    MBIA repeats and realleges paragraphs 1 through 53, as if set forth fully herein.

67.    The insurance policies that Defendants sold to MBIA obligate Defendants to pay in full any Securities Loss or Loss that MBIA incurs in connection with the Class Action, including all defense costs, as well as all damages or other liabilities that may be incurred in connection with settlements or judgments in the Class Action.

68.    Defendants have unreasonably withheld consent for MBIA to pursue a settlement of the Class Action.  Defendants also have reserved their rights with respect to the Class Action and have, therefore, refused to acknowledge that, pursuant to the terms of their insurance policies, they must indemnify and pay in full any Securities Loss or Loss MBIA incurs in connection with the Class Action, including all defense costs, as well as all damages or other liabilities that may be incurred in connection with settlements or judgments in the Class Action. Accordingly, an actual and justiciable controversy presently exists between MBIA and Defendants as to whether Defendants must pay in full any Securities Loss or Loss MBIA incurs

17

in connection with the Class Action, including all defense costs, as well as all damages or other liabilities that may be incurred in connection with settlements or judgments in the Class Action.

69.    MBIA needs and is entitled to a judicial declaration that Defendants' insurance policies obligate Defendants to indemnify MBIA in full for any Securities Loss or Loss MBIA incurs in connection with the Class Action, including all defense costs, as well as all damages or other liabilities that may be incurred in connection with settlements or judgments in the Class Action.

## PRAYER FOR RELIEF

**WHEREFORE**, MBIA respectfully requests judgment be entered against Defendants as follows:

1.    On the First Claim for Relief:

   a.    A finding that Defendants breached their obligations set forth in the insurance policies that they sold to MBIA by their failure and refusal to pay in full MBIA's total Defense Costs arising from both the SEC and NYAG regulatory investigations; and

   b.    Damages according to proof at the time of trial; and

   c.    MBIA's costs and attorneys' fees incurred in obtaining benefits under Defendants' insurance policies.

2.    On the Second Claim for Relief:

   a.    A finding that Defendants breached their obligations set forth in the insurance policies that they sold to MBIA by their failure and refusal to indemnify MBIA for its Securities Loss, by refusing to pay the costs of the Independent Consultant for which MBIA is legally liable under the terms of MBIA's settlements with the regulators.

   b.    Damages according to proof at the time of trial; and

18

            c.      MBIA's costs and attorneys' fees incurred in obtaining benefits under Defendants' insurance policies.

      3.      On the Third Claim for Relief:

            a.      A finding that Defendants breached their obligations set forth in insurance policies that they sold to MBIA by their failure and refusal to pay in full MBIA's total Defense Costs in connection with the Derivative Actions; and

            b.      Damages according to proof at the time of trial; and

            c.      MBIA's costs and attorneys' fees incurred in obtaining benefits under Defendants' insurance policies.

      4.      On the Fourth Claim for Relief:

            a.      A declaration that Defendants must indemnify and pay in full all Securities Loss or Loss that MBIA incurs with respect to the Class Action, including all defense costs, as well as all damages or any other liabilities that may be incurred in connection with settlements or judgments in the Class Action; and

            b.      MBIA's costs and attorneys' fees incurred in obtaining a declaration that Defendants' owe MBIA such benefits under their insurance policies.

19

## JURY DEMAND

MBIA demands a trial by jury of any and all issues properly triable by a jury in this action.

Dated: New York, New York
        May 21, 2008

James G. McCarney
Amory W. Donelly
HOWREY LLP
Citigroup Center
153 East 53rd Street, 54th Floor
New York, New York 10022
(212) 896-6500

Robert F. Ruyak
Robert P. Jacobs
Lara A. Degenhart
Christine S. Davis
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 783-0800
(202) 383-6610

*Attorneys for Plaintiff*

20

EXHIBIT A

 **CHUBB**

Chubb Group of Insurance Companies

~~15 Mountain View Road, Warren, New Jersey 07059~~

**DECLARATIONS (**
**EXECUTIVE LIABILITY AND**
~~INDEMNIFICATION POLICY~~

**ITEM 1.**    Parent Organization (Name and Address):

MBIA, INC.
c/o C T Corp System, One Commercial Plaza
Hartford, CT 06103

Policy Number: 7023-4658

**FEDERAL INSURANCE COMPANY**
Incorporated under the laws of Indiana, a stock
Insurance company, herein called the Company
Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED PERSONS DURING THE POLICY PERIOD. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE COMPANY TO DEFEND THOSE INSURED UNDER THE POLICY. PLEASE READ CAREFULLY.

**ITEM 2.**    Limits of Liability:

|     |     |     |
|-----|-----|-----|
| (A) | Each Loss | $    15,000,000 |
| (B) | Aggregate Limit of Liability Each Policy Period | $    15,000,000 |

NOTE:   THE LIMITS OF LIABILITY AND ANY DEDUCTIBLE AMOUNTS ARE REDUCED OR EXHAUSTED BY DEFENSE COSTS.

**ITEM 3.**    Coinsurance Percent:               0.00%

**ITEM 4.**    Deductible Amounts:

| Insuring Clause 1 | (A) | $ | 0.00 | Each Insured Person |
|-------------------|-----|---|------|---------------------|
|                   | (B) | $ | 0.00 | All Insured Persons |
| Insuring Clause 2 | (C) | $ | 2,500,000.00 | Executive Indemnification |

**ITEM 5.**    Policy Period:   from:    12:01 a.m. on February 15, 2004
                                  to:    12:01 a.m. on February 15, 2005
                         Local time at the address shown in ITEM 1.

**ITEM 6.**    Extended Reporting Period:

|     |     |     |
|-----|-----|-----|
| (A) | Additional Premium: | $743,750 |
| (B) | Additional Period:  | 1 year |

**ITEM 7.**    Pending or Prior Date:          May 8, 1987

**ITEM 8.**    Endorsement(s) Effective at Inception:      1-25



IN WITNESS WHEREOF, THE COMPANY issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

_Henry A Aulick_
Secretary

_Thomas F Motamed_
President

07/23/04
Date

_Robert Hamburger_
Authorized Representative



Chubb & Son, div. of Federal Insurance Company
as manager of the member insurers of the
Chubb Group of Insurance Companies

## POLICYHOLDER
## DISCLOSURE NOTICE OF
## TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, this policy makes available to you insurance for losses arising out of certain acts of international terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ -0-.

If you have any questions about this notice, please contact your agent or broker.

10-02-1261 (Ed. 1/2003)



In consideration of payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, the Company agrees as follows:

**Insuring Clause 1**

**Executive Liability Coverage**

1. The Company shall pay on behalf of each of the Insured Persons all Loss for which the Insured Person is not indemnified by the Organization and which the Insured Person becomes legally obligated to pay on account of any Claim first made against such Insured Person, individually or otherwise, during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted by such Insured Person before or during the Policy Period.

**Insuring Clause 2**

**Executive Indemnification Coverage**

2. The Company shall pay on behalf of the Organization all Loss for which the Organization grants indemnification to each Insured Person, as permitted or required by law, which the Insured Person has become legally obligated to pay on account of any Claim first made against such Insured Person individually or otherwise, during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted by such Insured Person before or during the Policy Period.

**Extended Reporting Period**

3. If this Policy is terminated or nonrenewed for any reason other than for nonpayment of premium, the Parent Organization, on behalf of the Insured Person shall have the right, upon payment of the additional premium set forth in ITEM 6.(A) of the Declarations for this Policy, to an extension of the coverage granted by this Policy for the period set forth in ITEM 6.(B) of the Declarations for this Policy (Extended Reporting Period) following the effective date of termination or nonrenewal with respect to any Claim or Claims made during the Extended Reporting Period, but only for any Wrongful Act committed, attempted, or allegedly committed or attempted, prior to the effective date of termination or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is received by the Company within thirty (30) days following the effective date of termination or nonrenewal. Any Claim made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding Policy Period.

If the Extended Reporting Period is purchased, the entire premium noted in ITEM 6.(A) of the Declarations shall be deemed fully earned at the inception of the Extended Reporting Period.



## Exclusions

*Exclusions Applicable to Insuring Clauses 1 and 2*

4. The Company shall not be liable for Loss on account of any Claim made against any Insured Person:

   a. based upon, arising from, or in consequence of any circumstances if written notice of such circumstances has been given under any policy of which this Policy is a renewal or replacement and if such prior policy affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such Loss, in whole or in part, as a result of such notice;

   b. based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any Insured Person or the Organization on or prior to the Pending or Prior Date set forth in ITEM 7. of the Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

   c. brought or maintained by or on behalf of any other Insured Person or the Organization except:

      i. a Claim that is a derivative action brought or maintained on behalf of the Organization by one or more persons who are not Insured Persons and who bring and maintain the Claim without the solicitation, assistance or participation of any Insured Person or the Organization,

      ii. a Claim brought or maintained by an Insured Person, other than an Insured Person who is or was a director of the Organization, for the actual or alleged wrongful termination of the Insured Person, or

      iii. a Claim brought or maintained by an Insured Person for contribution or indemnity, if the Claim directly results from another Claim covered under this Policy;

   d. for any Wrongful Act of Insured Persons serving in their capacities as fiduciaries (including fiduciaries as defined in the Employee Retirement Income Security Act of 1974 and amendments thereto or similar provisions of any federal, state or local statutory law or common law) of any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of the Organization;

   e. for bodily injury, mental or emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof;

   f. based upon, arising from, or in consequence of i. the actual, alleged or threatened discharge, release, escape or disposal of Pollutants into or on real or personal property, water or the atmosphere; or ii. any direction or request that the Organization test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or any voluntary decision to do so; including but not limited to any Claim for financial loss to the Organization, its security holders or its creditors based upon, arising from, or in consequence of the matters described in i. or ii. of this exclusion; or

   g. for defamation, libel, slander, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, assault or battery.



**Exclusions**
*(continued)*

**Exclusions Applicable Only to Insuring Clause 1**

5.  The Company shall not be liable under Insuring Clause 1 for Loss on account of any Claim made against any Insured Person:

    a.  for an accounting of profits made from the purchase or sale by such Insured Person of securities of the Organization within the meaning of Section 16b. of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any federal, state or local statutory law or common law;

    b.  based upon, arising from, or in consequence of any dishonest, deliberately criminal or deliberately fraudulent act or omission or any willful violation of any statute or regulation by such Insured Person, provided, however, that this Exclusion shall not apply unless it is established in fact that such Claim was brought about or contributed to by a dishonest, deliberately criminal or deliberately fraudulent act or omission or any willful violation of any statute or regulation by the Insured Person; or

    c.  based upon, arising from, or in consequence of such Insured Person having gained in fact any personal profit, remuneration or advantage to which such Insured Person was not legally entitled.

**Severability of Exclusions**

6.  With respect to the Exclusions of this Policy, no fact pertaining to or knowledge possessed by any Insured Person shall be imputed to any other Insured Person to determine if coverage is available.

**Limit of Liability, Deductible and Coinsurance**

7.  All Loss arising out of the same Wrongful Act and all Interrelated Wrongful Acts of any Insured Persons shall be deemed one Loss, and such Loss shall be deemed to have originated in the earliest Policy Period in which a Claim is first made against any Insured Person alleging any such Wrongful Act or Interrelated Wrongful Acts.

    The Company's maximum liability for each Loss, whether covered under Insuring Clause 1 or Insuring Clause 2 or both, shall be the Limit of Liability for each Loss set forth in ITEM 2.(A) of the Declarations. The Company's maximum aggregate liability for all Loss on account of all Claims first made during the same Policy Period, whether covered under Insuring Clause 1 or Insuring Clause 2 or both, shall be the Limit of Liability for each Policy Period set forth in ITEM 2.(B) of the Declarations.

    The Company's liability under Insuring Clause 1 or Insuring Clause 2 or both shall apply only to that part of each Loss which is excess of the applicable Deductible Amount set forth in ITEM 4. of the Declarations and such Deductible Amount shall be borne by the Insured Persons and/or the Organization uninsured and at their own risk.

**CHUBB**

| | |
|---|---|
| *Limit of Liability, Deductible and Coinsurance* (continued) | If a single Loss is covered in part under Insuring Clause 1 and in part under Insuring Clause 2, the maximum Deductible Amount applicable to the Loss shall be the Insuring Clause 2 deductible set forth in ITEM 4. of the Declarations. |
| | With respect to all Loss (excess of the Deductible Amount) originating in any one Policy Period, the Insured Persons and the Organization shall bear uninsured and at their own risk that percent of all such Loss specified as the Coinsurance Percent in ITEM 3. of the Declarations, and the Company's liability hereunder shall apply only to the remaining percent of all such Loss. |
| | The Limit of Liability available during the Extended Reporting Period, if exercised, shall be the remaining portion, if any, of the Aggregate Limit of Liability provided by the immediately preceding Policy Period. |

*Presumptive Indemnification*

8.  If the Organization:

    a.  fails or refuses, other than for reason of Financial Impairment, to indemnify the Insured Person for Loss; and

    b.  is permitted or required to indemnify the Insured Person for such Loss pursuant to the fullest extent permitted by law;

    then, notwithstanding any other conditions, provisions or terms of this Policy to the contrary, any payment by the Company of such Loss shall be subject to i. the Insuring Clause 2 Deductible Amount set forth in ITEM 4. of the Declarations for this Policy, and ii. all of the Exclusions of this Policy.

*Defense and Settlement*

9.  Subject to this Section, it shall be the duty of the Insured Persons and not the duty of the Company to defend Claims made against the Insured Persons.

    The Insured Persons and the Organization agree not to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Company's written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented.

    The Company shall have the right and shall be given the opportunity to effectively associate with the Insured Persons and the Organization in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any Claim that appears reasonably likely to be covered in whole or in part by this Policy.

    The Insured Persons and the Organization agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agree that, in the event of a Claim, the Insured Persons and the Organization will do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

    Defense Costs are part of and not in addition to the Limits of Liability set forth in ITEM 2. of the Declarations for this Policy, and the payment by the Company of Defense Costs reduces such Limits of Liability.



**CHUBB**

**Allocation**    10.    If both Loss covered by this Policy and loss not covered by this Policy are incurred, either because a Claim against the Insured Persons includes both covered and uncovered matters or because a Claim is made against both an Insured Person and others, including the Organization, then the Insured Persons, the Organization and the Company shall use their best efforts to agree upon a fair and proper allocation of such amount between covered Loss and uncovered loss.

If the Insured Persons, Organization and the Company agree on an allocation of Defense Costs, the Company shall advance on a current basis Defense Costs allocated to the covered Loss. If the Insured Persons, Organization and the Company cannot agree on an allocation:

a.    no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

b.    the Company shall advance on a current basis Defense Costs which the Company believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined; and

c.    the Company, if requested by the Insured Persons and/or the Organization, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the Insured Persons and the Organization, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

Any negotiated, arbitrated or judicially determined allocation of Defense Costs on account of a Claim shall be applied retroactively to all Defense Costs on account of such Claim, notwithstanding any prior advancement to the contrary. Any allocation or advancement of Defense Costs on account of a Claim shall not apply to or create any presumption with respect to the allocation of other Loss on account of such Claim.

**Reporting and Notice**    11.    The Insured Persons and the Organization shall, as a condition precedent to exercising their rights under this Policy, give to the Company written notice as soon as practicable, but in no event later than ninety (90) days after the termination of the Policy Period, of any Claim made against the Insured Persons for a Wrongful Act.

If an Insured Person or the Organization becomes aware of circumstances which could give rise to a Claim and gives written notice of such circumstance(s) to the Company during the Policy Period, then any Claims subsequently arising from such circumstances shall be considered to have been made during the Policy Period in which the circumstances were first reported to the Company.

The Insured Persons and/or the Organization shall, as a condition precedent to exercising their rights under this Policy, give to the Company such information and cooperation as it may reasonably require, including but not limited to a description of the Claim or circumstances, the nature of the alleged Wrongful Act, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the Insured Persons and/or the Organization first became aware of the Claim or circumstances.


CHUBB

| | | |
|---|---|---|
| *Notice* | 12. | Notice to the Company under this Policy shall be given in writing addressed to: |

<u>Notice of Claim:</u>

Home Office Claims Department
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, N.J. 07059

<u>All Other Notices:</u>

Department of Financial Institutions
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, N.J. 07059

Such notice shall be effective on the date of receipt by the Company at such address.

*Estates and Legal Representatives*   13.   Coverage shall extend to Claims for the **Wrongful Acts** of **Insured Persons** made against the estates, heirs, legal representatives or assigns of **Insured Persons** who are deceased or against the legal representatives or assigns of **Insured Persons** who are incompetent, insolvent or bankrupt.

*Other Insurance*   14.   If any **Loss** arising from any **Claim** made against any **Insured Person** is insured under any other valid policy(ies), prior or current, then this Policy shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the amount of payment from such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this Policy.

*Changes in Exposure*

*Acquisition or Creation of Another Organization*   15.   If the **Organization** i. acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**, or ii. acquires any organization by merger into or consolidation with an **Organization**, coverage shall apply to the **Insured Persons** of such organization under this Policy but only with respect to **Wrongful Acts** committed, attempted, or allegedly committed or attempted, after such acquisition or creation unless the Company agrees, after presentation of a complete application and all appropriate information, to provide coverage by endorsement for **Wrongful Acts** committed, attempted, or allegedly committed or attempted, by such **Insured Persons** prior to such acquisition or creation.

If the fair value of the assets of the acquired or created organization exceeds 10% of the total assets of the **Parent Organization** as reflected in the **Parent Organization's** most recent audited consolidated financial statements, the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable together with such information as the Company may require and shall pay any reasonable additional premium required by the Company.



**Changes in Exposure**
*(continued)*

*Acquisition of Parent Organization by Another Organization*

16. If i. the Parent Organization merges into or consolidates with another organization, or ii. another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the Parent Organization, or iii. the Organization completely ceases to actively engage in its primary business ("cessation"), or iv. upon the Financial Impairment of the Organization, coverage under this Policy shall continue until termination of this Policy, but only with respect to Claims for Wrongful Acts committed, attempted, or allegedly committed or attempted, by Insured Persons prior to such merger, consolidation, acquisition, cessation or Financial Impairment. The Parent Organization shall give written notice of such merger, consolidation, acquisition or cessation to the Company as soon as practicable together with such information as the Company may require. The full annual premium for the Policy Period shall be deemed fully earned immediately upon the occurrence of any event outlined in items i. through iv. above.

*Cessation of Subsidiaries*

17. In the event an organization ceases to be a Subsidiary before or after the Inception Date of this Policy, coverage with respect to such Subsidiary and its Insured Persons shall continue until termination of this Policy but only with respect to Claims for Wrongful Acts committed, attempted or allegedly committed or attempted prior to the date such organization ceased to be a Subsidiary.

*Representations and Application Form*

18. It is agreed by the Organization and Insured Persons that the particulars and statements contained in the Application Form (which shall be retained on file by the Company and shall be deemed attached hereto, as if physically attached hereto) are true and are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the Organization and the Insured Persons that such particulars and statements are material to the decision to issue this Policy and that the Policy is issued in reliance upon the truth of such particulars and statements. All such particulars and statements shall be deemed to be made by each and every one of the Insured Persons; provided, however, that, except for any misstatement or omission or which the signers of the Application Form are aware, any misstatement or omission in such Application Form or the attachments and materials submitted with it concerning a specified Wrongful Act by a particular Insured Person or his cognizance of any matter which he has reason to suppose might afford grounds for a future Claim against him shall not be imputed, for purposes of any rescission of this Policy, to any other Insured Persons who are not aware of the omission or the falsity of the statement.



| | | |
|---|---|---|
| **Investigation and Settlement** | 19. | The Company may make any investigation it deems necessary and may, with the written consent of the Organization, on behalf of the Insured Persons, make any settlement of a Claim it deems expedient. |
| **Subrogation** | 20. | In the event of any payment under this Policy, the Company shall be subrogated, to the extent of such payment, to all the Insured Persons' and the Organization's rights of recovery, and the Insured Persons and the Organization shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the Insured Persons or the Organization. |
| **Action Against the Company** | 21. | No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the Insured Persons and/or the Organization to determine the Insured Persons' liability nor shall the Company be impleaded by the Insured Persons and/or the Organization or their legal representatives. |
| **Bankruptcy or Insolvency** | 22. | Bankruptcy or insolvency of an Insured Person or the estate of an Insured Person shall not relieve the Company of its obligations nor deprive the Company of its rights under this Policy. |
| **Authorization Clause** | 23. | By acceptance of this Policy, the Parent Organization agrees to act on behalf of all Insured Persons and the Organization with respect to the giving and receiving of notice of Claim or termination, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for in this Policy, and the Insured Persons and the Organization agree that the Parent Organization shall act on their behalf. |
| **Alteration or Assignment** | 24. | No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is signed by an authorized employee of Chubb & Son. |
| **Termination of Policy** | 25. | This Policy shall terminate at the earliest of the following times: |
| | | a. upon the receipt by the Company of written notice of termination from the Parent Organization; or |
| | | b. upon expiration of the Policy Period as set forth in ITEM 2. of the Declarations of this Policy; or |
| | | c. at such other time as may be agreed upon by the Company and the Parent Organization; or |



**Termination of Policy**
*(continued)*

d.   sixty (60) days after receipt by the Parent Organization of the Company's notice of nonrenewal. Such notice shall be in conformance with applicable state laws and regulations.

The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the Parent Organization. Under any other circumstances the refund shall be computed pro rata.

---

**Valuation and Foreign Currency**

26.   All premiums, limits, retentions, Loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in the Policy, if judgment is rendered, settlement is denominated or another element of Loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is entered, the amount of the settlement is agreed upon or the other element of Loss is due, respectively.

---

**Definitions**

27.   Claim means:

a.   a written demand for monetary damages,

b.   a civil proceeding commenced by the service of a complaint or similar pleading,

c.   a criminal proceeding commenced by a return of an indictment, or

d.   a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

against any Insured Person for a Wrongful Act, including any appeal therefrom.

Defense Costs means that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the Organization) incurred in defending or investigating Claims and the premium for appeal, attachment or similar bonds.

Financial Impairment means the status of the Organization resulting from i. the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the Organization, or ii. the Organization becoming a debtor in possession.

Insured Capacity means the Insured Person's position or capacity but shall not include any position or capacity in any entity other than the Organization, even if the Organization directed or requested the Insured Person to serve in such other position or capacity.

Insured Person means any past, present or future duly elected director or duly elected or appointed officer of the Organization.



**Definitions**
**(continued)**

Interrelated Wrongful Acts means all causally connected Wrongful Acts.

Loss means the total amount which any Insured Person becomes legally obligated to pay on account of each Claim and for all Claims in each Policy Period and the Extended Reporting Period, if exercised, made against them for Wrongful Acts for which coverage applies, including, but not limited to, damages, judgments, settlements, costs and Defense Costs. Loss does not include: i. any amount not indemnified by the Organization for which the Insured Person is absolved from payment by reason of any covenant, agreement or court order; ii. any amount incurred by the Organization, (including its board of directors or any committee of the board of directors) in connection with the investigation or evaluation of any Claim or potential Claim by or on behalf of the Organization; iii. fines or penalties imposed by law including but not limited to punitive or exemplary damages, or the multiple portion of any multiplied damage award; or iv. matters uninsurable under the law pursuant to which this Policy is construed.

Organization shall mean the Parent Organization and/or any Subsidiary.

Parent Organization means the entity named in ITEM 1. of the Declarations.

Policy Period means the period of time specified in ITEM 5. of the Declarations, subject to prior termination in accordance with Section 25. If this period is less than or greater than one year, then the Limits of Liability specified in ITEM 2. of the Declarations shall be the Company's maximum limit of liability under this Policy for the entire period.

Pollutants means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or a state, county, municipality or locally counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. Pollutants shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

Subsidiary means any organization that, at the Inception Date of this Policy, is named in the Application Form and of which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled by the Parent Organization either directly or through one or more of its Subsidiaries or any organization of which more than 50% of the outstanding securities or voting rights representing the right to vote for election of directors was owned or controlled by the Parent Organization either directly or through one or more of its Subsidiaries prior to the Inception Date of this Policy.

Wrongful Act means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by an Insured Person, individually or otherwise, in his Insured Capacity, or any matter claimed against him solely by reason of his serving in such Insured Capacity.

For the purposes of the definitions, the singular includes the plural and the plural includes the singular, unless otherwise indicated.


**CHUBB**

Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  1

To be attached to and form a part of Policy
Number:        7023-4658

Issued to:  MBIA, INC.

## FEES AND CHARGES EXCLUSION ENDORSEMENT

It is agreed that the Company shall not be liable for Loss on account of any **Claim** based upon, arising from, or in consequence of any actual or alleged overcharging for investment management or advisory fees, charges or commissions; brokerage fees; entry or withdrawal fees in connection with the sale of investment company shares; or price fixing relating to company shares.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004

By _____
        Authorized Representative

Form 17-02-1196 (Ed. 3/2004) rev.                                    Page 1



**CHUBB**

Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  2

To be attached to and form a part of Policy
Number:         7023-4658

Issued to:  MBIA, INC.

## MUTUAL FUND MANAGEMENT EXCLUSION ENDORSEMENT

It is agreed that the Company shall not be liable for Loss on account of any Claim based upon, arising
from, or in consequence of the Organization's ownership, control, management or sponsorship of any
mutual funds where such Claim is based on, arises from or related to:

i.      liability of others assumed by the Insured Persons or the Organization under any
        contract or agreement, either oral or written, except to the extent that the Insured would
        have been liable in the absence of the contract or the agreement,

ii.     the non-function or malfunction of data processing machines or systems,

iii.    bankruptcy of, or suspension of payment by any bank, banking firm, or any broker or
        dealer in securities or commodities,

iv.     the insolvency, receivership, bankruptcy or reorganization of any mutual fund,

v.      actual or alleged overcharging for investment management or advisory fees, charges or
        commission, brokerage fees, or entry or withdrawal fees in connection with the sale of
        mutual fund shares, or

vi.     intentional non-compliance by the Organization or any Insured Person with any statute
        or regulation.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004

By _____
              _Robert Hamburger_
              Authorized Representative

Form 17-02-1212 (Ed. 3/2004) rev.

Page 1



Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  3

To be attached to and form a part of Policy
Number:          7023-4658

Issued to:  MBIA, INC.

## NEWLY ACQUIRED OR CREATED SUBSIDIARIES –
## PRIOR ACTS EXCLUSION ENDORSEMENT

It is understood and agreed that effective with the creation or acquisition date shown below, the term
Organization shall specifically include:

### SCHEDULE

| Name of Entity | Creation or Acquisition Date |
|---|---|
| CapMac Holdings | February 17, 1998 |
| New York Governing Board of Cooperative Liquid Assets Securities System | February 1, 2001 |
| MBIA Capital Corp | August 11, 1994 |
| MBIA Foundation, Inc. | March 23, 2001 |

It is agreed that with respect to coverage for the above Organizations, the Company shall not be liable
for Loss on account of any Claim based upon, arising from, or in consequence of:

1.  any Wrongful Act occurring prior to the Organization's respective creation or acquisition date set
    forth above; or

2.  any Wrongful Act occurring subsequent to such date that, together with a Wrongful Act occurring
    prior to such date, would constitute Interrelated Wrongful Acts.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004

By _____
          Authorized Representative

D&O Policy
Form 17-02-1213 (Ed. 10-94)                                        Page 1



Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  4

To be attached to and form a part of Policy
Number:          7023-4658

Issued to:  MBIA, INC.

## PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

It is agreed that the Company shall not be liable for Loss on account of any Claim based upon, arising
from or in consequence of rendering or failure to render professional services, including but not limited to
the following services:

    i.    broker;

    ii.    dealer;

    iii.    financial adviser;

    iv.    investment adviser;

    v.    investment banker;

    vi.    investment manager;

    vii.    clearing agent;

    viii.    trustee, fiduciary or agent within the Organization's Trust Department for individuals,
        governments, corporation or other entities,

However, this Exclusion shall not be applicable to any shareholder's derivative or class action suit against
the Insured Persons in connection with the failure to supervise any of the activities listed above.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004

By _____
              Authorized Representative

D&O Policy
Form 17-02-1223 (Rev. 11-03)

Page 1


CHUBB

| Effective date of this endorsement: February 15, 2004 | Federal Insurance Company |
|---|---|
| | Endorsement No.: 5 |
| | To be attached to and form a part of Policy Number:        7023-4658 |

Issued to:  MBIA, INC.

### SPOUSAL LIABILITY ENDORSEMENT

It is agreed that if a Claim against an Insured Person includes a Claim against the Insured Person's lawful spouse solely by reason of:

a.    such spouse's status as a spouse of the Insured Person, or

b.    such spouse's ownership interest in property which the claimant seeks as recovery for alleged Wrongful Acts of the Insured Person, all Loss which such spouse becomes legally obligated to pay on account of such Claim shall be treated for purposes of this Policy as Loss which the Insured Person becomes legally obligated to pay on account of the Claim made against the Insured Person. All limitations, conditions, provisions and other terms of coverage (including the deductible) applicable to the Insured Person's Loss shall also be applicable to such spousal Loss.

The coverage extension afforded by this endorsement does not apply to any Claim alleging any Wrongful Act by the Insured Person's spouse.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004                              By _____
                                                                    Authorized Representative

D&O Policy
Form 17-02-1232 (Rev. 5-95)                                                Page 1



Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  6

To be attached to and form a part of Policy
Number:          7023-4658

Issued to:  MBIA, INC.

## CONNECTICUT AMENDATORY ENDORSEMENT

It is agreed that:

1.  Section 3., Extended Reporting Period, is deleted in its entirety and replaced with the following:

    Extended Reporting Period

    3.   If this Policy is terminated or nonrenewed for any reason, the Parent Organization shall have
         the right, upon payment of the additional premium set forth in ITEM 6.(A) of the declarations to
         an extension of coverage granted by this Policy for a period of one year (365 days) following
         the effective date of termination or nonrenewal, but only for a Wrongful Act committed,
         attempted, or allegedly committed or attempted prior to the effective date of termination or
         nonrenewal. This right of extension shall lapse unless written notice of such election, together
         with payment of the Additional Premium due, is received by the Company within thirty (30)
         days following the effective date of nonrenewal or termination.

         The Company shall notify the Parent Organization in writing no later than fifteen (15) days of
         termination of the Policy of the automatic extended reporting period contained in Section 11.,
         Reporting and Notice, the availability of, premium for, and importance of purchasing, the
         Extended Reporting Period as set forth above.

2.  Section 25., Termination of Policy, is amended by deleting paragraph d. in its entirety and replacing
    it with the following:

    d.   sixty (60) days after receipt by the Parent Organization of the Company's notice of
         nonrenewal including the reason for such nonrenewal.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004                                    By _____
                                                            Authorized Representative

D&O Policy
Form 17-02-1240 (Ed. 10-94)                                                    Page 1



| Effective date of this endorsement: February 15, 2004 | Federal Insurance Company |
| | Endorsement No.: 7 |
| | To be attached to and form a part of Policy Number:     7023-4658 |

Issued to:   MBIA, INC.

## OUTSIDE DIRECTORSHIP LIABILITY EXTENSION ENDORSEMENT

It is agreed that:

1.  For the purposes of this endorsement only and coverage provided hereunder, Section 27., Definitions, Insured Person is amended by adding the following:

    Insured Person also means any elected or appointed officer of the Organization in any Outside Directorship.

2.  The following definitions are added to Section 27., Definitions:

    Outside Directorship means the position of director, officer, trustee, governor, or equivalent executive position with an Outside Entity if service by an Insured Person in such position was at the specific request of the Organization or was part of the duties regularly assigned to the Insured Person by the Organization.

    Outside Entity means any non-profit corporation, community chest, fund organization or foundation exempt from federal income tax as any organization described in Section 501(c) (3), Internal Revenue Code of 1986, as amended and any of the following organizations:

| Outside Entity | Insured Person |
|---|---|
| Safeco | Joseph J. Brown |
| Oxford | Joseph J. Brown |
| New Power Holdings | Richard Weill |

3.  Coverage provided to any Insured Person in an Outside Directorship shall:

    a.  not extend to the Outside Entity or to any director, officer, trustee, governor or any other equivalent executive or employee of the Outside Entity, other than the Insured Person serving in the Outside Directorship;

    b.  only extend to those Outside Entities and corresponding Insured Persons listed in item 2. above;

    c.  be specifically excess of any indemnity (other than any indemnity provided by the Organization) or insurance available to such Insured Person by reason of serving in the Outside Directorship, including any indemnity or insurance available from or provided by the Outside Entity;

D&O Policy
Form 17-02-1434 (Ed. 4-99)

Page 1



**CHUBB**

d. not extend to Loss on account of any Claim made against any Insured Person for a Wrongful Act committed, attempted, or allegedly committed or attempted, by such Insured Person while serving in the Outside Directorship if such Wrongful Act is committed, attempted, or allegedly committed or attempted, after the date:

    i. such Insured Person ceases to be an officer of the Organization, or

    ii. service by such Insured Person in the Outside Directorship ceases to be at the specific request of the Organization or a part of the duties regularly assigned to the Insured Person by the Organization;

e. not extend to Loss on account of any Claim made against any Insured Person for a Wrongful Act committed, attempted, or allegedly committed or attempted, by such Insured Person while serving in the Outside Directorship where such Claim is:

    i. by the Outside Entity, or

    ii. by any affiliate of the Outside Entity, or

    iii. on behalf of the Outside Entity and a director, officer, trustee, governor or equivalent executive of the Outside Entity instigates such Claim, or

    iv. by any director, officer, trustee, governor or equivalent executive of the Outside Entity.

4. Section 7., Limit of Liability, Deductible and Coinsurance, is amended by adding the following:

The Company's maximum liability to pay Loss under this Policy, including this endorsement, shall not exceed the amount set forth in ITEM 2. of the Declarations. This endorsement does not increase the Company's maximum liability beyond the Limits of Liability set forth in ITEM 2. of the Declarations.

If the Company or any other member company of the Chubb Group of Insurance Companies makes payment for Loss in connection with a Claim covered under another policy, on account of any Claim also covered under this Policy, the Limit of Liability for this Policy with respect to such Claim shall be reduced by the amount of such payment.

5. Section 4., Exclusions Applicable to Insuring Clauses 1 and 2, is amended by adding the following:

h. based upon, arising from, or in consequence of any Wrongful Acts of any Insured Person serving as director, officer, trustee, regent or governor of the Outside Entity arising out of their service as fiduciary (including fiduciary as defined in the Employee Retirement Income Security Act of 1974 and amendments thereto or similar provisions of any federal, state or local statute or common law), for any pension or welfare plan(s); or

i. based upon, arising from, or in consequence of:

    i. any litigation, arbitration, claim, demand, cause of action, equitable, legal or quasi-legal proceeding, decree or judgment (collectively referred to as litigation) against the Outside Entity occurring prior to, or pending as of 00, of which the Outside Entity or the director, officer, trustee, regent, or governor of the Outside Entity have received notice or otherwise had knowledge as of such date; or

    ii. any subsequent litigation arising from, or based on the same or substantially the same matters alleged in the prior or pending litigation included in i. above; or

    iii. any Wrongful Act of the Outside Entity, or the directors, officers, trustees, regents, or governors or the Outside Entity, which gave rise to such prior or pending litigation included in i. above; or

j. based upon, arising from, or in consequence of any Wrongful Act which occurred prior to the date coverage was granted for the Insured Person, or any Wrongful Act occurring subsequent to the date coverage was granted for the Insured Person which, together with a Wrongful Act occurring prior to such date, constitute Interrelated Wrongful Acts; or



k.     based upon, arising from, or in consequence of any Claim brought by or at the behest of
       any individual(s) and/or corporation that owns, beneficially or directly, ten percent (10%) or
       more of any class of outstanding stock of the Outside Entity; or

l.     based upon, arising from, or in consequence of any service by any Insured Person who
       was an elected or appointed public, governmental or quasi-governmental official.


ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.


Date:  July 23, 2004

                                                        By _____
                                                              Authorized Representative



Effective date of
this endorsement: February 15, 2004

Federal Insurance Company

Endorsement No.: 8 .

To be attached to and form a part of Policy
Number:          7023-4658

Issued to: MBIA, INC.

## PUNITIVE DAMAGES COVERAGE ENDORSEMENT

It is agreed that:

1.    The definition of Loss under Section 27., Definitions, is deleted in its entirety and replaced with the
following:

Loss means the total amount which any Insured becomes legally obligated to pay on account of
each Claim and for all Claims in each Policy Period and the Extended Reporting Period, if
exercised, for which coverage applies, including, but not limited to, compensatory damages,
punitive or exemplary damages, where lawfully insurable, judgments, settlements, costs and
Defense Costs.  Loss does not include:

i.    any amount not indemnified by the Organization for which the Insured Person is absolved
from payment by reason of any covenant, agreement or court order;

ii.   any amount incurred by the Organization (including its board of directors or any committee of
the board of directors) in connection with the investigation or evaluation of any Claim or
potential Claim by or on behalf of the Organization;

iii.  fines or penalties imposed by law, or the multiple portion of any multiplied damage award; or

iv.   matters uninsurable under the law pursuant to which this Policy is construed.

2.    For the purpose of resolving any dispute between the Company and the Organization regarding whether the
punitive or exemplary damages specified above are insurable under this Policy, the law of the jurisdiction
most favorable to the insurability of those damages shall control, provided that such law controls the
interpretation of this Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: July 23, 2004

By _____
              Authorized Representative

D&O Policy
Form 17-02-2534 (Ed. 12-01)

Page 1



Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  9

To be attached to and form a part of Policy
Number:        7023-4658

Issued to:  MBIA, INC.

## INSURANCE COMPANY E&O EXCLUSION – FAILURE TO SUPERVISE ENDORSEMENT

It is agreed that:

1.  The Company shall not be liable for Loss on account of any Claim based upon, arising from, or in consequence of:

    i.    any Insurance Policy issued by the Organization,

    ii.   any Insurance Policy issued by any other entity or self-insured program for which the Organization provides services of any kind,

    iii.  the refusal to issue or renew, or issuance or cancellation of any Insurance Policy by the Organization,

    iv.  the refusal or failure to issue, the refusal to renew, or the cancellation of:

        a.    any Insurance Policy issued by any other company, or

        b.    any insurance under any self-insured program for which the Organization provides services of any kind,

    v.   any claim under any Insurance Policy issued by the Organization, or any other entity or any self-insured program for which the Organization provides services of any kind, or

    vi.  the handling by the Organization or any of its representatives of any claim or obligation arising out of any Insurance Policy issued by the Organization, any other entity, or any insurance under a self-insured program for which the Organization provides services of any kind.

However, this Exclusion shall not be applicable to any shareholder's derivative or class action suit brought against the Insured Persons in connection with the failure to supervise any of the activities listed above.

D&O Policy
Form 17-02-2537 (Ed. 11-03)                                                                        Page 1



**CHUBB**

2.    Section 27., Definitions, is amended by adding the following:

Insurance Policy means any contract of insurance, reinsurance or any bond, including but not limited to annuities, endowments or pension contracts.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: July 23, 2004

By_____
Authorized Representative



Effective date of
this endorsement: February 15, 2004

Federal Insurance Company

Endorsement No.: 10

To be attached to and form a part of Policy
Number:        7023-4658

Issued to: MBIA, INC.

### ORDER OF PAYMENTS ENDORSEMENT

It is agreed that:

1. In the event of Loss arising from any D&O Claim(s) for which payment is due under the provisions of
this Policy but which Loss, in the aggregate, exceeds the remaining available Limit of Liability of this
Policy, upon the specific written request of the Parent Organization then this Policy shall:

a. first pay such Loss for which the Insured Organization does not provide indemnification to the
Insured Person, then with respect to whatever remaining amount of the Limit of Liability is available after
payment of such Loss,
b. then pay such Loss for which the Insured Organization does provide indemnification to the Insured
Person.

2. In the event of Loss arising from a D&O Claim(s) for which payment is due under the provisions of this
Policy (including those circumstances described in paragraph 1 above), the Company shall at the
written request of the Parent Organization:
a. first pay such Loss for which the Insured Organization does not provide indemnification to the
Insured Person, then
b. either pay or hold payment for such Loss which the Insured Organization does provide
indemnification to the Insured Person.

In the event that the Company withholds payment for indemnified Loss pursuant to the above request,
then the Company shall at any time in the future, at the request of the Parent Organization, release such
Loss payment to the Parent Organization, or make such Loss payment directly to an individual director
or officer in the event of covered Loss under any D&O Claim covered under this Policy pursuant to non-
indemnified covered Loss under any D&O Claim covered under this policy.

3. Nothing in this endorsement shall be construed to increase the Limit of Liability of the Company under
this Policy, which Limit of Liability shall remain the maximum liability of the Company under all D&O
Claims under all coverage under this Policy combined.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004

By_____
                    Authorized Representative

Name Policy
17-02-2577 (2/2004) rev.

Page 1


CHUBB

Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:     11

To be attached to and form a part of Policy
Number:              7023-4658

Issued to:  MBIA, INC.

## AMENDED DEFINITION OF INSURED PERSON – FOREIGN EQUIVALENT ENDORSEMENT

It is agreed that the definition of Insured Person of Section 27., Definitions, is deleted in its entirety and
replaced with the following:

Insured Person means any past, present or future duly elected director or duly elected or appointed
officer or trustee of the Organization or any equivalent position, as described in this definition, in any
other jurisdiction anywhere in the world.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004

By _____
            Authorized Representative

D&O Policy
Form 17-02-2756 (Ed. 6-01)                                    Page 1


**CHUBB**

Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  12

To be attached to and form a part of Policy
Number:          7023-4658

Issued to:  MBIA, INC.

### MODIFIED REPORTING AND NOTICE ENDORSEMENT

It is agreed that Section 11., Reporting and Notice, is deleted in its entirety and replaced with the following:

Reporting and Notice

11.    The Insured Persons and the Organization shall, as a condition precedent to exercising their rights under this Policy, give to the Company written notice as soon as practicable after the Office of the General Counsel or the Office of the Risk Manager first became aware, but in no event later the ninety (90) days after the termination of the Policy Period, of any Claim made against the Insured Persons for a Wrongful Act.

If an Insured Person or the Organization becomes aware of circumstances which could give rise to a Claim and gives written notice of such circumstances to the Company during the Policy Period, then any Claims subsequently arising from such circumstances shall be considered to have been made during the Policy Period in which the circumstances were first reported to the Company.

The Insured Persons and/or the Organization shall, as a condition precedent to exercising their rights under this Policy, give to the Company such information and cooperation as it may reasonably require, including but not limited to a description of the Claim or circumstances, the nature of the alleged Wrongful Act, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the Insured Person and/or the Organization first became aware of the Claim or circumstances.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: July 23, 2004

By _____
              Authorized Representative

D&O Policy
Form 17-02-2864 (Ed. 1-02)                                                      Page 1



CHUBB

Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  13

To be attached to and form a part of Policy
Number:          7023-4658

Issued to:  MBIA, INC.

### SHARED AGGREGATE LIMITS ENDORSEMENT

It is agreed that in addition to this Policy, the Company has issued to the Insured all Policies and Bonds listed below. It is expressly acknowledged by the Insured that the premium for this Policy and all Policies and Bonds listed below has been negotiated with the understanding that this Policy and all Policies and Bonds listed below combine and share a single aggregate limit of liability. Therefore, in consideration of the premium charged:

1.  The Company and the Insured agreed that the Company's maximum aggregate limit of liability for all Loss under this Policy, and for all payments of Loss under all Policies and Bonds listed below, in the aggregate, shall not exceed $15,000,000.

2.  It is agreed that the Company shall have no obligation under this Policy to make any payment of Loss to the extent that the amount of such Loss, when added to the amount of any Loss paid under this Policy and any Loss paid under any Policies and Bonds listed below, would exceed $15,000,000. Any payment of Loss under any Policies and Bonds listed below shall reduce the Limits of Liability available under this Policy for the payment of any Loss during the Policy Period.

3.  If the Company shall have paid Loss under this Policy and Loss under any Policies and Bonds listed below in an aggregate amount equaling $15,000,000, any and all obligations of the Company under this Policy and the Policies and Bonds listed below shall be completely fulfilled and extinguished, and the Company shall have no further obligations of any kind or nature under this Policy and the Policies and Bonds listed below.

4.  If a Loss is covered by this Policy and one or more of the Policies and Bonds listed below, and if more than one deductible amount applies to such Loss, the largest applicable deductible amount shall be the deductible amount applicable to such Loss.

| Policy/Bond Type | Policy/Bond Number |
| --- | --- |
| Executive Liability & Indemnification (D&O) | 70234658 |
| E&O Insurance Company (ICPL) | 70234664 |
| Investment Advisers E&O | 70234659 |
| Employment Practices Liability (EPL) | 70234660 |
| Fiduciary liability | 70234661 |
| Investment Company Asset Protection (ICAP-PL) | 68004516 |

General Use
Form 17-02-5152 (Ed. 5-03)

Page 1



| Insurance Company Bond (Form C-2) | 81844504 |
|---|---|
| Electronic & Computer Crime (ECCP) | 81844505 |
| Insurance Company Bond (Form C-2) | 81942818 |

For the purposes of this Endorsement, Loss shall include Loss as defined in this Policy and any Bond or Policy listed above and Single Loss as defined in any Bond listed above.

THIS ENDORSEMENT DOES NOT INCREASE THE LIMITS OF LIABILITY, AS SET FORTH IN THE DECLARATIONS.



Name and Address of Insured:

MBIA, INC.
c/o C T Corp System, One Commercial Plaza
Hartford, CT 06103

_____
Signature of Insured's Representative

_____
Position/Title

_____
Date

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004                    By _____
                                              Authorized Representative

General Use
Form 17-02-5152 (Ed. 5-03)                                        Page 3



Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:    14

To be attached to and form a part of Policy
Number:        7023-4658

Issued to:  MBIA, INC.

## AMEND TERMINATION OF POLICY ENDORSEMENT

It is agreed that Section 25., Termination of Policy, is amended by deleting paragraph b. in its entirety and
replacing it with the following:

b.    upon expiration of the Policy Period as set forth in ITEM 5. of the Declarations of this Policy; or


ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.


Date:  July 23, 2004

By _____
         Authorized Representative

D&O Policy
Form 17-02-5546 (Ed. 9-03)

Page 1



CHUBB

Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  15

To be attached to and form a part of Policy
Number:         7023-4658

Issued to:  MBIA, INC.

## AMEND SECTION 18. ENDORSEMENT

It is agreed that the last sentence of Section 18., Representations and Application Form, is deleted in its
entirety and replaced with the following:

All such particulars and statements shall be deemed to be made by each and every one of the Insured
Persons provided, however, that in the event that any of the statements, representations or information in
the Application Form are not true and accurate:

a.   Insuring Clause 2, (and any other Insuring Clause added by endorsement hereto) shall be void with
respect to (i) any Insured Person who knew as of the effective date of the Application Form the
facts that were not truthfully and accurately disclosed (whether or not the Insured Person knew of
such untruthful disclosure in the Application Form), (ii) any Insured Person to whom, and any
Organization to which, knowledge of such facts is imputed, and (iii) any Organization to the extent
it indemnifies an Insured Person who had knowledge of such facts or to whom knowledge of such
facts is imputed, whether or not knowledge of such facts is also imputed to that Organization. For
purposes of the preceding sentence, knowledge shall be imputed as follows:

   i.    the knowledge of any Insured Person who is a past, present or future chief financial officer,
in-house general counsel, chief executive officer, president or chairperson of an Organization
shall be imputed to such Organization and its Subsidiaries;

   ii.   the knowledge of the person(s) who signed the Application Form for this Policy shall be
imputed to all of the Insureds; and

   iii.  except as provided in a.i. above, the knowledge of an Insured Person who did not sign the
Application Form shall not be imputed to any other Insured.

b.   Insuring Clause 1 of this Policy shall be void with respect to any Insured Person who knew as of
the effective date of the Application Form the facts that were not truthfully and accurately disclosed
(whether or not the Insured Person knew of such untruthful disclosure in the Application Form).
Insuring Clause 1 shall not be rescinded with respect to any Insured Person who, as of the
effective date of the Application Form, did not know the facts that were not truthfully and accurately
disclosed in the Application Form. For purposes of this paragraph b., no knowledge possessed by
an Insured Person shall be imputed to any other Insured Person.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004

By _____
              Authorized Representative

D&O Policy
Form 17-02-5677 (Ed. 1-04)

Page 1



Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  16

To be attached to and form a part of Policy
Number:        7023-4658

Issued to:  MBIA, INC.

## ABSOLUTE LATE TRADING, MARKET TIMING, FAIR VALUATION
## AND SELECTIVE DISCLOSURE EXCLUSION ENDORSEMENT

It is agreed that the Company shall not be liable for Loss on account of any Claim based upon, arising
from, or in consequence of:

    i.    any actual or alleged late trading of shares of any investment company;

    ii.    any actual or alleged market timing of shares of any investment company;

    iii.    fair valuation or any actual or alleged failure to apply fair valuation to any portfolio
        securities held by any investment company; or

    iv.    any actual or alleged selective disclosure of portfolio holdings of any investment company

including, but not limited to, any Claim based upon, arising from or in consequence of any actual
or alleged misstatement, misleading statement, or omission in any investment company's
disclosure or other public statements, with respect to any of the foregoing.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004

By _____
              Authorized Representative



Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:   17

To be attached to and form a part of Policy
Number:            7023-4658

Issued to:  MBIA, INC.

## AMENDED DECLARATIONS - DEDUCTIBLE AMOUNTS ENDORSEMENT

It is agreed that ITEM 4. of the Declarations, Deductible Amounts, is deleted in its entirety and replaced
with the following:

ITEM 4.    Deductible Amounts:

| | | | |
|---|---|---|---|
| Insuring Clause 1 | (A) | $0 | Each Person Insured |
| | (B) | $0 | All Insured Persons |
| Insuring Clause 2 | (C) | $0 | Executive Indemnification |
| Insuring Clause 3 | (D) | $2,500,000 | Entity Coverage for Securities Claims |

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004

By _____
                Authorized Representative

Form 17-02-6565  (Ed. 5/2004)

Page 1



CHUBB

Effective date of
this endorsement: February 15, 2004

Federal Insurance Company

Endorsement No.:  18

To be attached to and form a part of Policy
Number:        7023-4658

Issued to:  MBIA, INC.

### ENTITY COVERAGE FOR SECURITIES CLAIMS ENDORSEMENT –
### PREDETERMINED ALLOCATION

It is agreed that:

1. This Policy is amended by adding the following Insuring Clause:

   Insuring Clause 3

   Organization Coverage

   The Company shall pay on behalf of any Organization all Securities Loss for which it becomes legally obligated to pay on account of any Securities Claim first made against it during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act by any Insured Person or the Organization before or during the Policy Period.

2. Section 27., Definitions, is amended as follows:

   a. Only as respects coverage under Insuring Clause 3, the definition Wrongful Act is deleted and replaced with the following:

      Wrongful Act means for purposes of coverage under Insuring Clause 3 any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by any Insured Person or Organization based upon, arising from, or in consequence of a Securities Transaction.

**CHUBB**

b.  The following definitions are added:

**Securities Transaction** means the purchase or sale of, or offer to purchase or sell, any securities issued by any Organization.

With respect to Insuring Agreements 1, 2, 3 and 4 **Securities Claim** means:

i.   a written demand for monetary damages,

ii.  a civil proceeding commenced by the service of a complaint or similar pleading,

iii.        a formal or informal administrative or regulatory proceeding or inquiry commenced by the filing of a notice of charges, formal or informal investigative order or similar document,

iv.         a criminal proceeding commenced by the return of an indictment,

which, in whole or in part, is based upon, arises from or is in consequence of the purchase or sale of, or offer to purchase or sell, any securities issued by the Organization.

**Securities Loss** means the total amount which any **Insured Person**, solely or jointly with the Organization, becomes legally obligated to pay on account of a **Securities Claim**, including but not limited to, damages, punitive or exemplary damages, judgments, settlements, costs and Securities Defense Costs.

**Securities Loss** does not include:

i.   any amount not indemnified by the Organization for which an Insured Person is absolved from payment by reason of any covenant, agreement or court order,

ii.  any amount incurred by the Organization (including its board of directors or any committee or the board of directors) in connection with the investigation or evaluation of any Securities Claim or potential Securities Claim by or on behalf of the Organization,

iii. fines or penalties (including punitive and exemplary damages) imposed by law or the multiplied portion of any multiplied damage award, or

v.          matters uninsurable under the law pursuant to which this Policy is construed.

For the purpose of resolving any dispute between the company and the **Organization** regarding whether the punitive or exemplary damages specified above are insurable under this policy, the law of jurisdiction most favorable to the insurability of those damages shall control, provided that such law controls the interpretation of this Policy.

**Securities Defense Costs** means that part of Securities Loss consisting of reasonable costs, charges, fees (including but not limited to attorney's fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the Organization) incurred in defending or investigating Securities Claims and the premium for appeal, attachment or similar bonds.

c.  The definition of Insured Person is amended by adding the following:

**Insured Person** also means:

i.   for purposes of coverage under Insuring Clause 1 or 2 any past, present and future employee of the Organization, but only for Wrongful Acts based upon, arising from or in consequence of any Securities Transaction, and

ii.  for purposes of coverage under Insuring Clause 3, the Organization.

3.  The heading and first line of Section 4. are deleted in their entirely and replaced with the following:

DFIMBIA20 (7/2004)                                                                                    Page 2



Exclusions Applicable to All Insuring Clauses

4. The Company shall not be liable for Loss on account of any Claim:

4. Section 4., Exclusions Applicable to All Insuring Clauses, is amended by adding the following to paragraph c.:

    iv. a Securities Claim that is brought by any Insured Person identified in Section 2.c.i. of this endorsement for any Wrongful Act based upon, arising from or in consequence of any Securities Transaction.

5. Exclusions is amended by adding the following:

Exclusions Applicable to Insuring Clause 3

5.A. The Company shall not be liable under Insuring Clause 3 for Loss on account of any Claim made against any Organization based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by any past, present or future chief financial officer, President or Chairman if a final adjudication adverse to the Organization establishes such a deliberately fraudulent act or omission or willful violation.

5.B. The Company shall not be liable under Insuring Clause 3 for that part of Loss, other than Defense Costs:

    a. which is based upon, arises from, or is in consequence of the actual or proposed payment by any Organization of allegedly inadequate or excessive consideration in connection with its purchase of securities issued by any Organization; or

    b. which is based upon, arises from, or is in consequence of any Organization having gained in fact, if established by an independent finding of fact, any profit or advantage to which it was not legally entitled.

6. Section 7., Limit of Liability, Deductible and Coinsurance, is deleted in its entirety and replaced with the following:

Limit of Liability, Deductible and Coinsurance

7. All Loss, including Securities Loss, arising out of the same Wrongful Act and all Interrelated Wrongful Acts of any Insured Persons shall be deemed one Loss, and such Loss shall be deemed to have originated in the earliest Policy Period in which a Claim is first made against any Insured Person alleging any such Wrongful Act or Interrelated Wrongful Acts.

The Company's maximum liability for each Loss, whether covered under one or more Insuring Clauses, shall be the Limit of Liability for each Loss set forth in ITEM 2.(A) of the Declarations for this Policy. The Company's maximum aggregate liability for all Loss on account of all Claims first made during the same Policy Period, whether covered under one or more Insuring Clauses, shall be the Limit of Liability for each Policy Period set forth in ITEM 2.(B) of the Declarations for this Policy.

The Company's liability under Insuring Clause 2 or Insuring Clause 3 shall apply only to that part of each Loss, including Securities Loss, which is excess of the Deductible Amount set forth in ITEM 4.(C) of the Declarations for this Policy, and such Deductible Amount shall be borne by the Organization uninsured and at its own risk.


CHUBB

The maximum Deductible Amount applicable to a single Loss, including Securities Loss, which is covered under more than one Insuring Clause shall be the amount set forth in ITEM 4. of the Declarations for this Policy.

With respect to all Loss (excess of the Deductible Amount) originating in any one Policy Period, the Insured Persons and the Organization shall bear uninsured and at their own risk that percent of all such Loss specified as the Coinsurance Percent in ITEM 3. of the Declarations, and the Company's liability hereunder shall apply only to the remaining percent of all such Loss.

The Limit of Liability available during the Extended Reporting Period, if exercised, shall be the remaining portion, if any, of the Aggregate Limit of Liability provided by the immediately preceding Policy Period.

7.  The first paragraph of Section 10., Allocation, is deleted in its entirety and replaced with the following:

If Securities Loss covered and not covered by this Policy either because a Securities Claim against Insured Persons includes both covered and uncovered matters or because a Securities Claim is made both against an Insured Person and the Organization, then the Insured Persons, the Organization and the Company shall allocate such amount to Loss as follows:

    a.  100% allocation of Securities Defense Costs, which the Company shall advance on a current basis; and

    b.  100% allocation of Securities Loss other than Securities Defense Costs.

If both Loss, other than Securities Loss, covered by this Policy and loss not covered by this Policy, are incurred, either because a Claim against the Insured Persons includes both covered and uncovered matters, or because a Claim is made against both an Insured Person and others, including the Organization, then the Insured Persons, the Organization and the Company shall allocate such amount between covered Loss and uncovered loss based upon the relative legal exposures of such parties to such matters.

8.  For purposes of coverage under Insuring Clause 3 only, Section 18., Representations and Application Form, is amended by adding the following:

The knowledge of any Insured Person who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairman of an Organization shall be imputed to such Organization and its Subsidiaries.

9.  For purposes of coverage under Insuring Clause 3 only, Section 6., Severability of Exclusions, is deleted in its entirety and replaced with the following:

Severability of Exclusions

    6.  With respect to the exclusions in Sections 4., 5.A. and 5.B., only facts pertaining to and knowledge possessed by any past, present and future chief financial officer, President or Chairman of any Organization shall be imputed to any Organization to determine if coverage is available for such Organization.



10. For purposes of coverage for employees who are Insured Persons pursuant to paragraph 2.c.i. of this endorsement, Section 8., Presumptive Indemnification, is amended as follows:

    a. Paragraph b. is deleted in its entirety and replaced with the following:

        b. is permitted or required to indemnify the Insured Person for such Loss to the fullest extent permitted or required by law;

    b. The final paragraph in the Section is deleted in its entirety and replaced with the following:

        For purposes of this Section 8., the shareholder and board of director resolutions of the Organization shall be deemed to provide indemnification for such Loss to the fullest extent permitted by common or statutory law.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: July 23, 2004

By _Robert Hamburg_
                    Authorized Representative



Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  19

To be attached to and form a part of Policy
Number:          7023-4658

Issued to:  MBIA, INC.

## AMENDED DEFINITION OF CLAIM

It is agreed that the definition of Claim of Section 27., Definitions, is deleted in its entirety and replaced
with the following:

Claim means:

a. a written demand for monetary damages;

b. a civil proceeding commenced by the service of a complaint or similar pleading;

c. a criminal proceeding commenced by a return of an indictment,

d.   a formal administrative or regulatory proceeding commenced by the filing of a notice of charges,
        formal investigative order or similar document, or

e.    an informal administrative or regulatory proceeding or inquiry commenced by the filing of a
        notice of charges, formal or informal investigative order or similar document, as it relates solely to
        a Securities Claim,

against any Insured for a Wrongful Act, including any appeal therefrom.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004

By_____
          Authorized Representative

DFIMBIA21 (7/2004)


CHUBB

Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  20

To be attached to and form a part of Policy
Number:        7023-4668

Issued to:  MBIA, INC.

## AMEND SECTION 5 ENDORSEMENT

It is agreed that Section 5., Exclusions Applicable Only to Insuring Clause 1, is deleted in its entirety and
replaced with the following:

Additional Exclusions Applicable to Insuring Clauses 1 and 2

5.   The Company shall not be liable for Loss on account of any Claim made against any Insured
     Person:

     a.   for an accounting of profits made from the purchase or sale by such Insured Person of
          securities of the Organization within the meaning of Section 16b. of the Securities
          Exchange Act of 1934 and amendments thereto or similar provisions of any federal, state
          or local statutory law or common law;

     b.   based upon, arising from, or in consequence of any dishonest, deliberately criminal or
          deliberately fraudulent act or omission or any willful violation of any statute, or regulation
          by such Insured Person, provided, however, that this exclusion shall not apply unless it
          has been finally adjudicated that such Claim was brought about or contributed to by a
          dishonest, deliberately criminal or deliberately fraudulent act or omission or any willful
          violation of any statute or regulation by the Insured Person; or

     c.   based upon, arising from, or in consequence of such Insured Person having gained in
          fact any personal profit, remuneration or advantage to which such Insured Person was not
          legally entitled, if it is established by an independent finding of fact that such conduct did
          occur.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004                                 By _____
                                                              Authorized Representative

Form DFMBIA27 (Ed. 7/2004)                                          Page 1

**C** CHUBB

Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  21

To be attached to and form a part of Policy
Number:        7023-4658

Issued to:  MBIA, INC.

AMENDED SECTION 27. DEFINITIONS

It is agreed that:

1.    Each iteration of the term "Application Form" in Section 18. Representations and Application Form is
      deleted and replaced by the term "Application."

2.    Section 27. Definitions is amended to include the following:

      Application means all signed applications, including attachments and other materials submitted
      therewith or incorporated therein, submitted by the Insureds to the Company for this Policy or for
      any policy of which this Policy is a direct or indirect renewal or replacement. In no event, shall the
      Application include publicly filed documents by the Company more than twelve (12) months prior
      to the inception of this Policy.

      ~~Application also shall mean all documents and materials constituting (i) the Annual Report (including
      financial statements) last issued to shareholders before this policy's inception date; (ii) the report~~
      last filed with the Securities and Exchange Commission on Form 10-K before this policy's
      inception date; (iii) the report last filed with the Securities and Exchange Commission on Form 10-
      Q before this policy's inception date; (iv) the proxy statement and (if different) definitive proxy
      statement last filed with the Securities and Exchange Commission before this policy's inception
      date; (v) all reports filed with the Securities and Exchange Commission on Form 8-K during the
      twelve months preceding this policy's inception date; and (vi) all reports filed with the Securities
      and Exchange Commission on Schedule 13D, with respect to any equity securities of such
      Organization, during the twelve months preceding this policy's inception date. All such
      applications, attachments, materials and other documents are deemed attached to, incorporated
      into and made a part of this Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004                                 By_____
                                                          *Robert Hamburg*
                                                          Authorized Representative

Form DFIMBIA6 (Ed. 7/2004)                                      Page 1


**CHUBB**

Effective date of
this endorsement: February 15, 2004

Federal Insurance Company

Endorsement No.: 22

To be attached to and form a part of Policy
Number:        7023-4658

Issued to: MBIA, INC.

## MODIFIED POLLUTION EXCLUSION ENDORSEMENT

It is agreed that Section 4, Exclusions Applicable to All Insuring Clauses is amended by
deleting Exclusion f. and replacing it with the following:

f.      The Company shall not be liable for Loss on account of any Claim based upon, arising
out of, directly or indirectly resulting from, in consequence of, or in any way involving any
actual, alleged or threatened exposure to, or generation, storage, transportation, discharge,
emission, release, dispersal, escape, treatment, removal or disposal of, any smoke, vapors,
soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials (including
materials which are intended to be or have been recycled, reconditioned or reclaimed) or other
irritants, pollutants or contaminants, or any regulation, order, direction or request to test for,
monitor, clean up, remove, contain, treat, detoxify or neutralize any of the foregoing, or any
action taken in contemplation or anticipation of any such regulation, order, direction or
request.

Including but not limited to any Claim for financial loss to the Organization, its security
holders or its creditors based upon, arising from, or in consequence of the matters described
in the paragraph above. However, the Exclusion shall not apply to Loss

(a) which is on account of any Claim brought by any shareholder of the Organization
in his capacity as such, whether in his own right or on behalf of the Organization,
provided that such Claim is brought and maintained without the assistance,
participation or solicitation of any Insured Person, and

(b) for which the Organization either is not permitted or fails by reason of Financial
Impairment, to indemnify the Insured Person; or

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: July 23, 2004                              By _____
                                                        Authorized Representative

Form DFIMBIA7 (Ed. 7/2004)                                      Page 1


CHUBB

| | |
|---|---|
| Effective date of this endorsement: February 15, 2004 | Federal Insurance Company |
| | Endorsement No.: 23 |
| | To be attached to and form a part of Policy Number:     7023-4658 |

Issued to:   MBIA, INC.

## FAILURE TO MAINTAIN REINSURANCE EXCLUSION

It is agreed that the Company shall not be liable for Loss on account of any **Claim** based upon, arising from, or in consequence of the failure or omission to obtain, effect or maintain reinsurance, or to comply with the terms of any reinsurance agreement. However, this exclusion will not apply to **Defense Costs**.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 23, 2004

By _____
            *Robert Hamburger*
            Authorized Representative

Form DFIMBIA9 (Ed. 7/2004)                                    Page 1



Effective date of
this Endorsement: 2/15/04

**FEDERAL INSURANCE COMPANY**

Endorsement No:    24

To be attached to and form part of
Policy Number:    70234658

Issued to:  MBIA, INC.

---

### INVESTIGATIVE COSTS COVERAGE ENDORSEMENT

It is agreed that

1.    The following Insuring Clause is added to this Policy:

Insuring Clause 4

Investigative Costs Coverage

The Company shall pay on behalf of the **Organization** all **Investigation Costs** which such **Organization** becomes legally obligated to pay on account of any **Shareholder Derivative Demand** first made during the **Policy Period** or, if exercised, the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted, by an **Insured Person** before or during the **Policy Period.**

2.    The heading for Section 4., Exclusions Applicable to Insuring Clauses 1 and 2, is deleted in its entirety and replaced with the following:

Exclusions Applicable to All Insuring Clauses

3.    Section 7., Limit of Liability, Deductible and Coinsurance, is amended as follows:

a.    The following is added to the second paragraph:

The Company's maximum liability for all **Investigation Costs** covered under Insuring Clause 4 on account of all **Shareholder Derivative Demands** first made during the same **Policy Period** shall be $200,000.  This is a sublimit which further limits and does not increase the Company's maximum liability under this Policy as set forth in ITEM 2. (B) of the Declarations for this Policy.

b.    The following is added to the third paragraph:

No deductible amount shall apply to **Investigation Costs** covered under Insuring Clause 4.

4.    Section 9., Defense and Settlement, is amended for purposes of coverage under Insuring Clause 4 by deleting the first paragraph in its entirety and replacing it with the following:

Subject to this Section, it shall be the duty of the **Organization** and not the duty of the Company to investigate and evaluate any **Shareholder Derivative Demand.**

5.    Section 27., Definitions, is amended by adding the following:

**Investigation Costs** means reasonable costs, charges, fees (including but not limited to attorney's fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Organization**) incurred by the **Organization** (including its board of directors or any committee of the board of directors) in connection with the investigation or evaluation of any **Shareholder Derivative Demand**.

**Shareholder Derivative Demand** means any written demand, by one or more shareholders of an **Organization**, upon the board of directors of such **Organization**, to bring a civil proceeding in a court of law against any **Insured Person** for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by an **Insured Person** before or during the **Policy Period**.

6.    For purposes of coverage under Insuring Clause 4 only:

a.    all references in this Policy to **Loss** or **Defense Costs** shall only mean **Investigation Costs**; and

b.    all references in this Policy to **Claim** or to **Claim** against any **Insured Person** shall only mean any **Shareholder Derivative Demand**.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: July 23, 2004                          By_____

                                                         Authorized Representative

DFIMBIA25 (Ed. 7-2004)

 **CHUBB**

DFI Primary Professional Liability

PREMIUM BILL

Insured:  MBIA, INC.

Date:  07/23/2004

Producer:  AON FINANCIAL SERVICES GROUP, INC
4100 E MISSISSIPPI #1300
DENVER, CO 802460000

Company:  Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:  7023-4658

Policy Period:  February 15, 2004          to    February 15, 2005

NOTE: - PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE
RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE.

| COVERAGE | PREMIUM |
|---|---|
| EXECUTIVE LIABILITY & INDEMNIFICATION | $425,000.00 |

|  | |
|---|---|
| TOTAL | $425,000.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

Form 14-02-1324I (Rev. 1/99)



Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:   25

To be attached to and form a part of Policy
Number:          7023-4658

Issued to:  MBIA, INC.

DELETE AN ENDORSEMENT

It is agreed that Endorsement Number(s) 17 is deleted in its entirety.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  August 12, 2004

By
_____
Authorized Representative

General Use
Form 17-02-5542 (Ed. 9-03)

Page 1



Effective date of
this endorsement: February 15, 2004

Federal Insurance Company

Endorsement No.: 26

To be attached to and form a part of Policy
Number:          7023-4658

Issued to:  MBIA, INC.

AMENDED DECLARATIONS - DEDUCTIBLE AMOUNTS ENDORSEMENT

It is agreed that ITEM 4. of the Declarations, Deductible Amounts, is deleted in its entirety and replaced
with the following:

ITEM 4.    Deductible Amounts:

| | | |
|---|---|---|
| Insuring Clause 1 | (A) | $0 | Each Person Insured |
| | (B) | $0 | All Insured Persons |
| Insuring Clause 2 | (C) | $2,500,000 | Executive Indemnification |
| Insuring Clause 3 | (D) | $2,500,000 | Entity Coverage for Securities Claims |

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  August 12, 2004

By _____
                    *Robert Hartwig*
                    Authorized Representative

Form 17-02-6565  (Ed. 5/2004)                                              Page 1



CHUBB

Effective date of
this endorsement:  February 15, 2004

Federal Insurance Company

Endorsement No.:  27

To be attached to and form a part of Policy
Number:          7023-4658

Issued to:  MBIA, INC.

### AMENDED SECTION 4. EXCLUSIONS APPLICABLE TO INSURING CLAUSES 1 AND 2, PARAGRAPH c. ENDORSEMENT

It is agreed that Section 4. Exclusions Applicable to Insuring Clauses 1 and 2, paragraph c. is amended to include the following:

iv.   a Claim brought or maintained on behalf of the Organization by a bankruptcy trustee, debtor-in-possession or similar official who has been appointed to take control of, supervise, manage or liquidate such Organization; provided that such Claim is brought and maintained without the solicitation, assistance or participation of any Insured Person;

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  August 12, 2004

By _____
        Authorized Representative

17-02-6627 (8/2004)                                                      Page 1

# EXHIBIT B



**ace usa**

# ACE American Insurance Company

### INTEGRATED EXCESS INSURANCE POLICY

**This Policy is issued by the stock insurance company listed above (herein "Insurer").**

UNLESS OTHERWISE PROVIDED IN THE FOLLOWED POLICY, THIS POLICY IS A CLAIMS MADE POLICY WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  PLEASE READ THIS POLICY CAREFULLY.

### DECLARATIONS

| | |
|---|---|
| **Policy No.** | DOX G21670029 001 |

**Item 1.**     Insured Company:     MBIA, Inc
                 Principal Address:     c/o C T Corp System, One Commericial Plaza
                                        Hartford, CT 06103

**Item 2.  Coverages Provided**
      Coverage I:     Directors and Officers Liability
      Coverage II:     Insurance Company Professional Liability
      Coverage III:     Fiduciary Liability
      Coverage IV:     Employment Practices Liability
      Coverage V:     Financial Institution Bond
      Coverage VI:     Financial Institution Electronic and Computer Crime
      Coverage VII:     Investment Advisor E&O/D&O
      Coverage VIII:     Investment Company Asset Protection

**Item 3.**     Schedule of  Followed Policies

| | Insurer | Number |
|---|---|---|
| **Coverage I:** | Federal Insurance Company | 7023-4658 |
| **Coverage II:** | Chubb Custom Insurance Company | 7023-4664 |
| **Coverage III:** | Federal Insurance Company | 7023-4661 |
| **Coverage IV:** | Federal Insurance Company | 7023-4660 |
| **Coverage V:** | Federal Insurance Company | 8184-4504 |
| **Coverage VI:** | Federal Insurance Company | 8184-4505 |
| **Coverage VII:** | Chubb Custom Insurance Company | 7023-4659 |
| **Coverage VIII:** | Federal Insurance Company | 6800-4516 |

| **Item 4.** | Policy Period: |
|---|---|
| | From 12:01A.M.     2/15/04     To 12:01 A.M.     2/15/05 |
| | (Local time at the address shown in Item 1.) |

| **Item 5.** | Aggregate Limit of Liability: |
|---|---|
| | **$ 15,000,000**     for all Loss under all Coverages combined |

| **Item 6.** | Premium: |
|---|---|
| | $ 880,000 |
| | Discovery Period Premium: 175% of the Policy Period Premium |

| **Item 7.** | Notice to Insurer: | Director of D&O Claims |
|---|---|---|
| | | ACE American Insurance Company |
| | | 140 Broadway, 40th Floor |
| | | New York, NY 10005 |
| | All other Notices: | ACE American Insurance Company |
| | | 140 Broadway, 40th Floor |
| | | New York, NY 10005 |

**Item 8.**     Schedule of Underlying Policies:
**Coverage I:**

| **Insurer** | **Policy Number** | **Limits** | **Primary or Excess** | **Policy Period** |
|---|---|---|---|---|
| 1: Federal Insurance Company | 7023-4658 | $15,000,000 | Primary | 2/15/04 – 2/15/05 |

**Coverage II:**

| **Insurer** | **Policy Number** | **Limits** | **Primary or Excess** | **Policy Period** |
|---|---|---|---|---|
| 1:Chubb Custom Insurance Company | 7023-4664 | $15,000,000 | Primary | 2/15/04 – 2/15/05 |

**Coverage III:**

| **Insurer** | **Policy Number** | **Limits** | **Primary or Excess** | **Policy Period** |
|---|---|---|---|---|
| 1: Federal Insurance Company | 7023-4661 | $15,000,000 | Primary | 2/15/04 – 2/15/05 |

**Coverage IV:**

| **Insurer** | **Policy Number** | **Limits** | **Primary or Excess** | **Policy Period** |
|---|---|---|---|---|
| 1: Federal Insurance Company | 7023-4660 | $15,000,000 | Primary | 2/15/04 – 2/15/05 |

**Coverage V:**

| Insurer | Policy Number | Limits | Primary or Excess | Policy Period |
|---|---|---|---|---|
| 1: Federal Insurance Company | 8184-4504 | $15,000,000 | Primary | 2/15/04 – 2/15/05 |

Coverage VI:

| Insurer | Policy Number | Limits | Primary or Excess | Policy Period |
|---|---|---|---|---|
| 1: Federal Insurance Company | 8184-4505 | $15,000,000 | Primary | 2/15/04 – 2/15/05 |

Coverage VII:

| Insurer | Policy Number | Limits | Primary or Excess | Policy Period |
|---|---|---|---|---|
| 1: Chubb Custom Insurance Company | 7023-4659 | $15,000,000 | Primary | 2/15/04 – 2/15/05 |

Coverage VIII:

| Insurer | Policy Number | Limits | Primary or Excess | Policy Period |
|---|---|---|---|---|
| 1: Federal Insurance Company | 6800-4516 | $15,000,000 | Primary | 2/15/04 – 2/15/05 |

**THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION AND THE POLICY FORM ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.**

DATE: _8/24/04_
MO/DAY/YR.

AUTHORIZED REPRESENTATIVE
Gregg C. Rentko, CPCU

INTEGRATED EXCESS INSURANCE POLICY

I.    INSURING CLAUSE

## INTEGRATED EXCESS INSURANCE POLICY

**I.    INSURING CLAUSE**

In consideration of the payment of the premium and in reliance upon all statements made in the application including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions and limitations of this policy, the Insurer agrees to provide insurance coverage to the Insureds in accordance with the terms, definitions, conditions, exclusions and limitations of the respective Followed Policy, except as otherwise provided herein.

**II.    LIMIT OF LIABILITY**

A.    It is expressly agreed that liability for any covered Loss shall attach to the Insurer only after the insurers of the respective Underlying Policies shall have paid, in the applicable legal currency, the full amount of the Underlying Limit and the Insureds shall have paid the full amount of the uninsured retention, if any, applicable to the primary Underlying Policy. The Insurer shall then be liable to pay only covered Loss in excess of such Underlying Limit up to its Aggregate Limit of Liability as set forth in Item 5 of the Declarations, which shall be the maximum aggregate liability of the Insurer under this policy with respect to all covered Loss.

B.    In the event and only in the event of the reduction or exhaustion of the Underlying Limit by reason of the insurers of the Underlying Policies paying, in the applicable legal currency, Loss otherwise covered hereunder, then this policy shall, subject to the Aggregate Limit of Liability set forth in Item 5 of the Declarations:  (i) in the event of reduction, pay excess of the reduced Underlying Limit, and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this policy shall only pay excess of the retention applicable to the exhausted primary Underlying Policy, which retention shall be applied to any subsequent Loss in the same manner as specified in such primary Underlying Policy.

C.    Notwithstanding any of the terms of this policy which might be construed otherwise, this policy shall drop down only in the event of reduction or exhaustion of the respective Underlying Limit and shall not drop down for any other reason including, but not limited to, uncollectibility (in whole or in part) of any Underlying Limits. The risk of uncollectibility of such Underlying Limits (in whole or in part) whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the Insureds and is not in any way or under any circumstances insured or assumed by the Insurer.

**III.    DEFINITIONS**

A.    The term  "Loss" has the same meanings in this policy as are attributed to them in the respective Followed Policy.  The terms "Insurer", "Followed Policy", "Underlying Policies", "Policy Period" and "Aggregate Limit of Liability"  have the meanings attributed to them in the Declarations.

B.    The term "Insureds " means those individuals and entities insured by the respective Followed Policy.

C.    The term "Policy Period" means the period set forth in Item 4 of the Declarations, subject to prior termination.

D.    The term "Underlying Limit" means, with respect to each type of coverage afforded by this policy, an amount equal to the aggregate of all limits of liability as set forth in Item 8 of the Declarations for all Underlying Policies affording such coverage, plus the uninsured retention, if any, applicable to the primary Underlying Policy affording such coverage.

**IV.    UNDERLYING INSURANCE**

A.    This policy is subject to the same representations as are contained in the Application for any Underlying Policy and the same terms, definitions, conditions, exclusions and limitations (except as regards the premium, the limits of liability, the policy period and except as otherwise provided herein) as are contained in or as may be added to the respective Followed Policy and, to the extent coverage is further limited or restricted thereby, to any other Underlying Policies.  In no event shall this policy grant broader coverage than would be provided by any of the Underlying Policies.

B.    It is a condition of this policy that the Underlying Policies shall be maintained in full effect with solvent insurers during the Policy Period except for any reduction or exhaustion of the aggregate limits contained therein by reason of Loss paid thereunder (as provided for in Section II (B) above).  If the Underlying Policies are not so

maintained, the Insurer shall not be liable under this policy to a greater extent than it would have been had such Underlying Policies been so maintained.

C. If during the Policy Period or any Discovery Period the terms, definitions, conditions, exclusions or limitations of the Followed Policy are changed in any manner, the Insureds shall as a condition precedent to coverage under this policy give to the Insurer written notice of the full particulars thereof as soon as practicable but in no event later than 30 days following the effective date of such change. This policy shall become subject to any such changes upon the effective date of the changes in the Followed Policy, provided that the Insureds shall pay any additional premium reasonably required by the Insurer for such changes.

D. As a condition precedent to coverage under this policy, the Insureds shall give to the Insurer as soon as practicable written notice and the full particulars of (i) the exhaustion of the aggregate limit of liability of any Underlying Policy, (ii) any Underlying Policy not being maintained in full effect during the Policy Period, or (iii) an Insurer of any Underlying Policy becoming subject to a receivership, liquidation, dissolution, rehabilitation or similar proceeding or being taken over by any regulatory authority.

## V. GENERAL CONDITIONS

A. Discovery Period Premium: If the Insureds elect a discovery period or extended reporting period ("Discovery Period") as set forth in the respective Followed Policy following the cancellation or non-renewal of this policy, the Insureds shall pay to the Insurer the additional premium set forth in Item 6 of the Declarations.

B. Application of Recoveries: All recoveries or payments recovered or received subsequent to a Loss settlement under this policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insureds and the Insurer, provided always that the foregoing shall not affect the time when Loss under this policy shall be payable.

C. Notice: All notices under this policy shall be given as provided in the respective Followed Policy and shall be properly addressed to the appropriate party at the respective address as shown in the Declarations.

D. Cooperation: The Insureds shall give the Insurer such information and cooperation as it may reasonably require.

E. Claim Participation: The Insurer shall have the right, but not the duty, and shall be given the opportunity to effectively associate with the Insureds in the investigation, settlement or defense of any Claim even if the applicable Underlying Limit has not been exhausted.

F. Changes and Assignment: Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this policy or estop the Insurer from asserting any right under the terms of this policy. The terms, definitions, conditions, exclusions and limitations of this policy shall not be waived or changed, and no assignment of any interest under this policy shall bind the Insurer, except as provided by endorsement issued to form a part hereof, signed by the Insurer or its authorized representative.

G. Headings: The descriptions in the headings and sub-headings of this policy are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

In Witness Whereof, the Company has caused this policy to be signed by its President and Secretary but this policy shall not be valid unless completed by the attachment hereto of a Declaration Page and signed by a duly authorized representative of the company.

_____                    _____
        Secretary                                  President
                                           Gregg C. Rentko, CPCU

## SIGNATURES

| Named Insured<br>**MBIA, Inc.** | | | Endorsement Number<br>**1** |
|---|---|---|---|
| Policy Symbol<br>**DOX** | Policy Number<br>**G21670029 001** | Policy Period<br>**02/15/2004  to 02/15/2005** | Effective Date of Endorsement<br>**02/15/2004** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**BANKERS STANDARD FIRE AND MARINE COMPANY**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**BANKERS STANDARD INSURANCE COMPANY**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**ACE INDEMNITY INSURANCE COMPANY**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**ACE AMERICAN INSURANCE COMPANY**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**ACE PROPERTY AND CASUALTY INSURANCE COMPANY**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**INSURANCE COMPANY OF NORTH AMERICA**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**PACIFIC EMPLOYERS INSURANCE COMPANY**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**ACE FIRE UNDERWRITERS INSURANCE COMPANY**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

GEORGE D. MULLIGAN, Secretary

SUSAN RIVERA, President

**WESTCHESTER FIRE INSURANCE COMPANY**
1133 Avenue of the Americas, 32nd Floor, New York, NY 10036

GEORGE D. MULLIGAN, Secretary

BRIAN E. DOWD, President

Authorized Agent
Gregg C. Rentko, CPCU

CC-1K11d  (04/02) Ptd.in U.S.A.

# Waiver of Application

| Named Insured<br>**MBIA, Inc.** | | | Endorsement Number<br>**2 (revised)** |
|---|---|---|---|
| Policy Symbol<br>**DOX** | Policy Number<br>**G21670029 001** | Policy Period<br>**02/15/2004  to 02/15/2005** | Effective Date of Endorsement<br>**02/15/2004** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

It is hereby understood that the Insurer has relied upon the statements and representations contained in the below referenced application (including materials submitted thereto and, if such application is a renewal application, all such previous policy applications, and their attachments and materials, for which this policy is a renewal or succeeds in time) as being accurate and complete.  It is further agreed that the Named Insured and the Insureds warrant and represent to the Insurer that the statements and representations made in such application were accurate on the date such representations and statements were so given and that in connection therewith the Insureds hereby reaffirm each and every statement made in the application to the carrier scheduled below as accurate as of February 15, 2004 as if it was made to the Insurer on such date.  All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this policy and are to be considered incorporated into this policy.

| | |
|---|---|
| TYPE OF APPLICATION:  Executive Liability<br>CARRIER:            Chubb<br>DATE SIGNED:      2/17/04 | TYPE OF APPLICATION:  Investment Advisers<br>                      Errors and Omissions<br>                      - MBIA Inc. (For MBIA<br>                      Investment Management<br>                      Corp and MBIA Captial<br>                      Management Corp) |
| TYPE OF APPLICATION:  Insurance Company<br>                      Professional Liability<br>CARRIER:            Chubb<br>DATE SIGNED:      2/17/04 | CARRIER:            Chubb<br>DATE SIGNED:      2/15/04 |
| | TYPE OF APPLICATION:  Financial Insitution<br>                      Electronic and Computer<br>                      Crime |
| TYPE OF APPLICATION:  Employment Practices<br>                      Liability<br>CARRIER:            Chubb<br>DATE SIGNED:      2/18/04 | CARRIER:            Chubb<br>DATE SIGNED:      2/15/04 |
| | TYPE OF APPLICATION:  Investment Company<br>                      Professional Liability<br>CARRIER:            Chubb<br>DATE SIGNED:      2/15/04 |
| TYPE OF APPLICATION:  Fiduciary Liability<br>CARRIER:            Chubb<br>DATE SIGNED:      2/18/04 | |
| TYPE OF APPLICATION:  Financial Insitution<br>                      Bond<br>CARRIER:            Chubb<br>DATE SIGNED:      2/17/04 | TYPE OF APPLICATION:  Investment Advisers<br>                      Errors and Omissions<br>                      - 1838 Investment Advisors<br>                      LLC<br>CARRIER:            Chubb<br>DATE SIGNED:      2/17/04 |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Gregg C. Rentko, CPCU
Authorized Agent

CC-1e15 Printed in U.S.A.

# Prior and Pending Litigation

| Named Insured<br>**MBIA, Inc.** | | | Endorsement Number<br>**3** |
| --- | --- | --- | --- |
| Policy Symbol<br>**DOX** | Policy Number<br>**G21670029 001** | Policy Period<br>**02/15/2004 to 02/15/2005** | Effective Date of Endorsement<br>**02/15/2004** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is hereby understood that the Insurer shall not be liable for Loss on account of any claim made against any Insured based upon, arising out of, or attributable to any prior or pending litigation against any Insured filed on or before May 8, 1987 for the Directors & Officers Liability Coverage Part, February 15, 2001 for the Insurance Company Professional Liability Coverage Part, October 10, 2000 for the Investment Advisers E&O/D&O Coverage Part, February 15, 2001 for the Employment Practices Coverage Part, February 15, 2001 for the Fiduciary Liability Coverage Part and October 10, 2000 for the Investment Company Asset Protection Coverage Part, or the same or substantially the same fact, circumstance or situation underlying or alleged therein.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Gregg C. Rentko, CPCU

Authorized Agent

CC-1e15 Printed in U.S.A.

# POLICYHOLDER DISCLOSURE NOTICE
# OF TERRORISM INSURANCE COVERAGE

| Named Insured **MBIA, Inc.** | | | Endorsement Number **4** |
|---|---|---|---|
| Policy Symbol **DOX** | Policy Number **G21670029 001** | Policy Period **02/15/2004 to 02/15/2005** | Effective Date of Endorsement **02/15/2004** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

You should be aware that under the Terrorism Risk Insurance Act of 2002 ("The Act") effective November 26, 2002, any losses caused by certified acts of terrorism under your existing coverage may be partially reimbursed by the United States under a formula established by federal law (applicability is subject to the terms and conditions of each individual policy). The Act was specifically designed to address the ability of businesses and individuals to obtain property and casualty insurance for terrorism and to protect consumers by addressing market disruptions and ensure the continued availability of terrorism coverage.

Under the terms of The Act, you may now have the right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Responsibility for Compensation under The Act is shared between insurance companies covered by The Act and the United States. Under the formula set forth in The Act, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible, which is paid by the insurance company providing the coverage.

We are providing you with the terrorism coverage required by The Act. The premium for the coverage is set forth below.

Terrorism Risk Insurance Act premium: $ 0.

_Gregg C. Rentko, CPCU_

Authorized Agent

TRIA11 (1/03)

08 Civ. 4313 (RMB) (DFE)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MBIA INC.,

                                    Plaintiff,

                    -against-

FEDERAL INSURANCE COMPANY and
ACE AMERICAN INSURANCE COMPANY,

                                    Defendants.

AMENDED COMPLAINT

HOWREY LLP
Citigroup Center
153 East 53rd Street
54th Floor
New York, NY 10022
(212) 896-6500