UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MBIA, INC., | Case No. 08-CV-4313(RMB) (DFE) |
| Plaintiff, | |
| v. | **DEFENDANT ACE AMERICAN INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES TO THE AMENDED COMPLAINT AND JURY DEMAND** |
| FEDERAL INSURANCE COMPANY and ACE AMERICAN INSURANCE COMPANY | |
| Defendants. | |

The Defendant, ACE American Insurance Company ("ACE"), also referred to as "Defendant" wherever applicable, through its attorneys, Drinker Biddle & Reath, LLP, hereby files its Answer to Plaintiff's Amended Complaint ("Complaint"). ACE denies each and every allegation of the Complaint, except as specifically admitted below. If any allegation refers to the defendants herein collectively, this Answer responds only on behalf of ACE. Specifically responding to the allegations in the Complaint, and subject to and without waiving the defenses stated herein, ACE states as follows:

### NATURE OF THE CASE

1.      ACE admits that the Complaint alleges breach of contract and seeks declaratory judgment but denies that ACE breached any insurance contracts. ACE admits that it issued an excess D&O liability insurance policy to MBIA but denies that it issued a primary D&O policy to MBIA. ACE denies that MBIA has any present rights to coverage under ACE's excess D&O policy for any of the costs or legal liability described in the second sentence of paragraph 2 of the Complaint. ACE avers that the allegations characterizing the Underlying Claims described in the third sentence of

paragraph 2 of the Complaint refer to documents that speak for themselves such that no response is required.

2.      The allegations in the first sentence of paragraph 2 of the Complaint refer to documents – the primary and excess D&O Policy – that speak for themselves, such that no responsive pleading is required.   To the extent a response is required, ACE denies that paragraph 2 contains a complete and accurate description of the Policy' terms and conditions and, further, denies the allegations and legal conclusions contained in the first sentence of paragraph 2.  ACE denies that MBIA has incurred legal liability and defense costs that are covered under ACE's excess D&O policy.  ACE lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 2 regarding any other defendant and therefore denies them.

3.      ACE denies that it has unreasonably refused to consent to MBIA's settlement of the class action and denies that its conduct exposes MBIA to further defense costs and greater potential legal liability.  ACE lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 3 regarding any other defendant and therefore denies them.

4.      ACE admits that the Complaint alleges breach of contract and seeks declaratory judgment but denies that ACE breached any insurance contracts and denies that ACE has any present obligation to indemnify MBIA for any of the costs or legal liability described in the paragraph 4 of the Complaint.

**THE PARTIES**

5.      Admitted.

6.      ACE lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 6 identifying Federal and therefore denies them.

7.      ACE admits that it is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Philadelphia. ACE admits that it is doing business in New York or has transacted business in New York.   ACE denies the remaining allegations in paragraph 7.

**JURISDICTION AND VENUE**

8.      Admitted.

9.      Admitted.

10.      ACE admits that this Court has personal jurisdiction over ACE.   ACE denies that this action arises out of ACE's sale and issuance of an insurance contract to MBIA in New York.  ACE lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 10 regarding any other defendant and therefore denies them.

11.      Admitted.

**THE SUBJECT INSURANCE POLICY**

12.      ACE avers that the allegations in paragraph 12 refer to a document – Exhibit A to the Complaint, identified as the "Federal Policy" -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 12 contains a complete and accurate description of the Federal Policy's terms and conditions.

13.     ACE avers that the allegations in paragraph 13 refer to a document – the Federal Policy -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 13 contains a complete and accurate description of the Federal Policy's terms and conditions.

14.     ACE avers that the allegations in paragraph 14 refer to a document – the Federal Policy -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 14 contains a complete and accurate description of the Federal Policy's terms and conditions.

15.     ACE avers that the allegations in paragraph 15 refer to a document – the Federal Policy -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies the legal conclusions in paragraph 15 and denies that it contains a complete and accurate description of the Federal Policy's terms and conditions.

16.     ACE avers that the allegations in paragraph 16 refer to a document – the Federal Policy -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 16 contains a complete and accurate description of the Federal Policy's terms and conditions.

17.     ACE avers that the allegations in paragraph 17 refer to a document – the Federal Policy -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 17 contains a complete and accurate description of the Federal Policy's terms and conditions.

18.     ACE avers that the allegations in paragraph 18 refer to a document – the Federal Policy -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies all legal conclusions in paragraph 18 and denies that

paragraph 18 contains a complete and accurate description of the Federal Policy's terms and conditions.

19.     ACE avers that the allegations in paragraph 19 refer to a document – the Federal Policy -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 19 contains a complete and accurate description of the Federal Policy's terms and conditions.

20.     ACE avers that the allegations in paragraph 20 refer to a document – the Federal Policy -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 20 contains a complete and accurate description of the Federal Policy's terms and conditions.

21.     ACE avers that the allegations in paragraph 21 refer to a document – the Federal Policy -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies all legal conclusions in paragraph 21 and denies that paragraph 18 contains a complete and accurate description of the Federal Policy's terms and conditions.

22.     ACE avers that the allegations in paragraph 22 refer to a document – the Federal Policy -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 22 contains a complete and accurate description of the Federal Policy's terms and conditions.

23.     ACE denies that Exhibit B is a complete and accurate copy of the ACE Policy.  In any event, ACE avers that the allegations in paragraph 23 refer to a document that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 23 contains a complete and accurate description of the ACE Policy's terms and conditions.

24.     ACE avers that the allegations in paragraph 24 refer to a document – the ACE Policy -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies the legal conclusions in paragraph 24 and denies that paragraph 24 contains a complete and accurate description of the ACE Policy's terms and conditions.

25.     ACE avers that the assertions in paragraph 25 are legal conclusions to which no response is required.  To the extent a response is required, ACE denies that the costs described in paragraph 25 "presently reach" the ACE Policy.

26.     ACE admits that MBIA has paid the premium owed to ACE for the ACE Policy and denies all remaining allegations and legal conclusions in paragraph 26 as to ACE.

### BACKGROUND OF THE REGULATORY INVESTIGATIONS

27.     ACE lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint and therefore denies them

28.     ACE lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint and therefore denies them.

29.     ACE avers that the allegations in paragraph 29 refer to a document – the "Formal Order" -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 29 contains a complete and accurate description of the Formal Order.

30.     ACE avers that the allegations in paragraph 30 refer to a document – a subpoena served upon MBIA by the SEC -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 30 contains a complete and accurate description of the document at issue.

31.     ACE avers that the allegations in paragraph 31 refer to a document – a subpoena served upon MBIA by the NYAG -- that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 31 contains a complete and accurate description of the document at issue.

32.     ACE avers that the allegations in paragraph 32 refer to documents – additional subpoenas issued by the SEC – that speak for themselves, such that no response is required.  To the extent a response is required, ACE denies that paragraph 32 contains a complete and accurate description of the documents at issue. ACE lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 32 concerning the breadth of the SEC  investigation and therefore denies them.

33.     ACE lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 33 and therefore denies them.

34.     ACE lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 34 and therefore denies them.

35.     ACE avers that the allegations in paragraph 35 refer to documents – settlement agreements with the SEC and NYAG – that speak for themselves, such that no response is required.  To the extent a response is required, ACE denies that paragraph 35 contains a complete and accurate description of the documents at issue.  ACE lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 35 and therefore denies them.

36.     ACE avers that the allegations in paragraph 36 refer to a document – the Independent Consultant's final report – that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that paragraph 36 contains a complete and accurate description of the Independent Consultant's final report.

## BACKGROUND OF THE SECURITIES CLASS ACTION AND SHAREHOLDER DERIVATIVE ACTIONS

37.     ACE admits that MBIA's current and former shareholders filed private lawsuits against MBIA and its directors and officers.

38.     ACE avers that the allegations in paragraph 38 refer to documents – the pleadings filed by plaintiffs in the "Class Action" – that speak for themselves, such that no response is required.  To the extent a response is required, ACE denies that paragraph 38 contains a complete and accurate description of the Class Action pleadings.

39.     Admitted.

40.     ACE avers that the allegations in the first sentence of paragraph 40 refer to a document – a Confidential Settlement Communication – that speaks for itself, such that no response is required.  To the extent a response is required, ACE denies that the first sentence of paragraph 40 contains a complete and accurate description of the Confidential Settlement Communication.  ACE lacks sufficient knowledge or information to form a belief as to the truth of the allegations in the second and last sentences of paragraph 40 and therefore denies them.  ACE admits that MBIA asked Federal to consent to a specific counterproposal to settle the Class Action to be funded from the Federal Policy.  ACE denies that it refused its consent to MBIA's request of Federal.  ACE denies that MBIA asked ACE to consent to a specific counterproposal to settle the Class Action to be funded from the ACE Policy.

41.     ACE admits that MBIA shareholders brought two derivative actions captioned and docketed as described in the first sentence of paragraph 41.  ACE avers that the allegations in the second sentence of paragraph 41 refer to documents – the pleadings

filed by plaintiffs in the "Derivative Actions" – that speak for themselves, such that no response is required.  To the extent a response is required, ACE denies that paragraph 41 contains a complete and accurate description of the Derivative Actions' pleadings.

42.    ACE admits that the Derivative Actions were dismissed by stipulation with each side paying its own litigation costs but is without sufficient knowledge or information to form a belief as to the truth of the allegation concerning any payment by MBIA and therefore denies it.  ACE admits that the Special Litigation Committee of the Board of Directors of MBIA, Inc. issued a Final Report dated August 15, 2006.  ACE avers that the allegations describing the Final Report refer to a document that speaks for itself such that no response is required.  To the extent  that a response is required, ACE denies that paragraph 42 contains a complete and accurate description of the Final Report.

## FEDERAL'S AND ACE'S DENIALS OF COVERAGE

ACE denies that it has issued any "denials of coverage."

43.    ACE admits that that Federal and MBIA have engaged in written correspondence discussing coverage issues since at least March 2007 and avers that those documents speak for themselves, such that no response is required.  To the extent a response is required, ACE lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 43, which are directed solely to defendant Federal, and therefore denies them.

44.    ACE avers that the allegations in paragraph 44 (a) through 44 (d) refer to one or more documents – Federal's "coverage denial" – that speak for themselves, such that no response is required.  To the extent a response is required, ACE denies that paragraph 44 contains a complete and accurate description of Federal's "coverage denial."   ACE

denies that it has "joined" Federal in the positions described in paragraph 44 and by way of further response avers only that it has fully reserved all rights and defenses available to it under its Policy, the Primary Policy, in equity and at law.

45.    ACE avers that the allegation that MBIA has incurred defense costs that exceed the level at which ACE coverage attaches is a legal conclusion to which no response is required.  To the extent that a response is required, ACE denies that ACE is obligated to reimburse MBIA for any defense costs.   ACE admits that it has declined to make any payments.  ACE admits that it takes the position that liability for any covered Loss cannot attach to ACE until the insurer of the Primary Policy (Federal) has paid, in the applicable legal currency, the full amount of the its limit of liability and MBIA has paid the full amount of the uninsured retention.   ACE denies the remaining allegations in paragraph 45.

46.    ACE denies the allegations in paragraph 46 that are directed to ACE.  By way of further response, ACE avers that the assertions in paragraph 46 are legal conclusions to which no response is required.

47.    ACE denies the allegations in the first sentence of paragraph 47 that are directed to ACE and further avers that those assertions refer to documents – ACE's coverage correspondence – that speak for themselves, such that no response is required. ACE avers that the remaining allegations in paragraph 47 are legal conclusions to which no response is required.

48.    ACE denies the allegations in the first sentence of paragraph 48 that are directed to ACE and further avers that those assertions refer to documents – ACE's coverage correspondence – that speak for themselves, such that no response is required.

ACE avers that the remaining assertions in paragraph 48 are legal conclusions to which no response is required.

49.    ACE denies the allegations in the first sentence of paragraph 49 that are directed to ACE and further avers that those assertions refer to documents – ACE's coverage correspondence – that speak for themselves, such that no response is required. ACE avers that the remaining assertions in paragraph 49 are legal conclusions to which no response is required.

50.    ACE denies the allegations in the first sentence of paragraph 50 that are directed to ACE and further avers that those assertions refer to documents – ACE's coverage correspondence – that speak for themselves, such that no response is required. ACE avers that the remaining assertions in paragraph 50 are legal conclusions to which no response is required.

51.    ACE avers that the factual allegation in paragraph 51 purporting to describe ACE's position refers to documents – ACE's coverage correspondence – that speak for themselves, such that no response is required.  ACE avers that the remaining assertions in paragraph 51 are legal conclusions to which no response is required.  To the extent a response is required, ACE denies the allegations contained in paragraph 51 of the Complaint.

52.    ACE admits that MBIA has presented its positions in correspondence, which speaks for itself such that no response is required.  ACE admits that it has consistently maintained its position that liability for any covered Loss cannot attach to ACE until the insurer of the Primary Policy (Federal) has paid, in the applicable legal currency, the full amount of the its limit of liability and MBIA has paid the full amount of the uninsured retention.  ACE admits that it has consistently and fully reserved all of its rights and

defenses under its Policy, the Primary Policy, in equity and at law. ACE denies all

remaining allegations in paragraph 52 of the Complaint.

53.    ACE is without sufficient information or knowledge to form a belief as to the

allegations directed to Federal in paragraph 53 of the Complaint and therefore denies

them. ACE admits that it has fully reserved all of its rights and defenses under its Policy,

the Primary Policy, in equity and at law. ACE avers that the remaining allegations in

are legal conclusions to which no response is required. To the extent a response is

required, ACE denies all remaining allegations contained in paragraph 53 of the

Complaint.

## FIRST CLAIM FOR RELIEF
### Breach of Contract – Duty to Pay in Full the Total Defense Costs
### Relating to the SEC and NYAG Investigations

54.    ACE incorporates by reference paragraphs 1 through 53, as if set forth fully

herein.

55.    ACE avers that the assertions in paragraph 55 are legal conclusions to which

no response is required. To the extent a response is required, ACE denies the allegations

directed to ACE in paragraph 55 of the Complaint.

56.    ACE avers that the assertions in paragraph 56 are legal conclusions to which

no response is required. To the extent a response is required, ACE denies the allegations

directed to ACE contained in paragraph 56 of the Complaint.

57.    ACE avers that the assertions in paragraph 57 are legal conclusions to which

no response is required. To the extent a response is required, ACE denies the allegations

directed to ACE contained in paragraph 57 of the Complaint.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract – Duty to Indemnify for MBIA's Legal Liability to Pay the Costs**
**of the Independent Consultant Required Under the Regulatory Settlements**

58.     ACE incorporates by reference paragraphs 1 through 53, as if set forth fully

herein.

59.     ACE avers that the assertions in paragraph 59 are legal conclusions to which

no response is required.  To the extent a response is required, ACE denies the allegations

directed to ACE in paragraph 59 of the Complaint.

60.     ACE avers that the assertions in paragraph 60 are legal conclusions to which

no response is required.  To the extent a response is required, ACE denies the allegations

directed to ACE in paragraph 60 of the Complaint.

61.     ACE avers that the assertions in paragraph 61 are legal conclusions to which

no response is required.  To the extent a response is required, ACE denies the allegations

directed to ACE in paragraph 61 of the Complaint.

## THIRD CLAIM FOR RELIEF
### Breach of Contract – Duty to Pay in Full the Total Defense Costs for the Derivative Actions

62.     ACE incorporates by reference paragraphs 1 through 53, as if set forth fully herein.

63.     ACE avers that the assertions in paragraph 63 are legal conclusions to which no response is required.  To the extent a response is required, ACE denies the allegations directed to ACE in paragraph 63 of the Complaint.

64.     ACE avers that the assertions in paragraph 64 are legal conclusions to which no response is required.  To the extent a response is required, ACE denies the allegations directed to ACE in paragraph 64 of the Complaint.

65.     ACE avers that the assertions in paragraph 65 are legal conclusions to which no response is required.  To the extent a response is required, ACE denies the allegations directed to ACE in paragraph 65 of the Complaint.

## FOURTH CLAIM FOR RELIEF
### Declaratory Judgment – Duty to Pay in Full the Total Loss Arising From the Class Action

66.     ACE incorporates by reference paragraph 1 through 53, as if set forth fully herein.

67.     ACE avers that the assertions in paragraph 67 are legal conclusions to which no response is required.  To the extent a response is required, ACE denies the allegations directed to ACE in paragraph 67 of the Complaint.

68.     ACE avers that the assertions in paragraph 68 are legal conclusions to which no response is required.  To the extent a response is required, ACE denies the allegations directed to ACE in paragraph 68 of the Complaint.

69.    ACE avers that the assertions in paragraph 69 are legal conclusions to which no response is required.  To the extent a response is required, ACE denies the allegations directed to ACE in paragraph 69 of the Complaint.

## PRAYER FOR RELIEF

ACE admits that MBIA are seeking the relief for which it prays but denies that MBIA is entitled to any such relief.

WHEREFORE, Defendant ACE respectfully requests that this Court dismiss MBIA's Complaint against it and grant it such further relief as it deems just and equitable.

## AFFIRMATIVE DEFENSES[1]

### First Affirmative Defense

The Complaint fails to state a claim against ACE upon which relief can be granted.

### Second Affirmative Defense

The Complaint's claims are barred or limited by one or more of the provisions of the ACE Policy, which expressly incorporates the terms, conditions, exclusions and limitations of the Federal Policy, unless otherwise provided in the ACE Policy.

### Third Affirmative Defense

Plaintiff's claims are barred because Section II.A of ACE's Policy provides that liability for any covered Loss shall attach to ACE only after the insurer of the Primary Policy (Federal) has paid, in the applicable legal currency, the full amount of the its limit of liability and MBIA has paid the full amount of the uninsured retention.

---

[1] Capitalized terms herein are used as defined in ACE's Policy.

**Fourth Affirmative Defense**

Plaintiff's claims are barred because Section II.B of ACE's Policy provides that it pays excess of a reduced Underlying Limit or continues in force as primary insurance in the event and only in the event of the reduction or exhaustion of the Underlying Limit by reason of the insurer of the Primary Policy (Federal) paying, in the applicable legal currency, Loss otherwise covered under the ACE Policy.

**Fifth Affirmative Defense**

Plaintiffs' claims are barred because Section II.C of the ACE Policy provides in relevant part that ACE's Policy shall drop down only in the event of reduction or exhaustion of the Underlying Limit and shall not drop down for any other reason including, but not limited to, uncollectibility (in whole or in part) of any Underlying Limits.

**Sixth Affirmative Defense**

Plaintiffs' claims may be barred or limited because Section IV.B of the ACE Policy provides that the Underlying [Federal] Policy shall be maintained in full effect except for any reduction or exhaustion of the Federal limits of liability by reason of Loss paid thereunder as provided for in Section II(B) of the ACE Policy.

**Seventh Affirmative Defense**

Plaintiffs' claims may be barred or limited because Section V.D of the ACE Policy provides that the Insureds shall give the Insurer such information and cooperation as it may reasonably require.

**Eighth Affirmative Defense**

Plaintiffs' claims may be barred or limited because Section V.E of the ACE Policy provides that the Insurer shall have the right, but not the duty, and shall be given the opportunity to effectively associate with the Insureds in the investigation, settlement or defense of any Claim even if the applicable Underlying Limit has not been exhausted.

**Ninth Affirmative Defense**

Plaintiffs' claims may be barred or limited by the "Waiver of Application" Endorsement to ACE's Policy, which provides that ACE relied upon statements and representations contained in nine different applications dated in February 2004, and by Section 18 of the primary policy, which provides the following:

> All such particulars and statements [made in the application] shall be deemed to be made by each and every one of the Insured Persons provided, however that, except for any misstatements or omissions of which the signers of the Application Form are aware, any misstatement or omission in such Application Form or the attachments and materials submitted with it concerning a specified Wrongful Act by a particular Insured Person or his cognizance of any matter which he has reason to suppose might afford grounds for a future Claim against him shall not be imputed, for purposes of any rescission of the Policy, to any Insured Persons who are not aware of the omission or the falsity of the statement.

**Tenth Affirmative Defense**

Plaintiffs' claims may be barred or limited by Endorsement No. 18 to the Federal Policy, which provides:

> The knowledge of any Insured Person who is a past, present or future chief financial officer, inhouse general counsel, chief executive officer, president of chairman of an Organization shall be imputed to such Organization.

**Eleventh Affirmative Defense**

Plaintiffs' claims are barred or limited by  Endorsement No. 24 to the Federal

Policy, which limits coverage under the policy for Investigation Costs which the Insured

Organization becomes legally obligated to pay on account of a Shareholder Derivative

Demand to a $200,000 sublimit.

**Twelfth Affirmative Defense**

Plaintiffs' claims are barred or limited by Insuring Clause 3, as amended by

Endorsement No. 18 to the Federal Policy, which provides entity coverage only for

Securities Loss for which the Organization becomes legally obligated to pay on account

of any Securities Claim first made against it during the Policy Period for a Wrongful Act

by any Insured Person or the Organization before or during the Policy Period.

**Thirteenth Affirmative Defense**

Plaintiffs' claims may be barred or limited by Exclusion 5, as amended by

Endorsement No. 18 in the Federal Policy, which provides:

> The Company shall not be liable under Insuring Clause 3
> for Loss on account of any Claim made against any
> Organization based upon, arising from, or in consequence
> of any deliberately fraudulent act or omission or any willful
> violation of any statute or regulation by any past, present,
> or future chief financial officer, President or Chairman if a
> final adjudication adverse to the Organization establishes
> such a deliberately fraudulent act or omission or willful
> violation

**Fourteenth Affirmative Defense**

Plaintiffs' claims are barred or limited by Endorsement No. 18 of the Federal Policy,

which defines Securities Claim to mean:

> i.  a written demand for monetary damages;

ii.  a civil proceeding commenced by the service of a complaint or similar pleading;

iii. a formal or informal administrative or regulatory proceeding or inquiry commenced by the filing of a notice of charges, formal or informal investigative order or similar document;

iv. a criminal proceeding commenced by the return of an indictment,

which, in whole or in part, is based upon, arises from or is in consequence of the purchase or sale or offer to purchase or sell any securities issued by the Organization.

### Fifteenth Affirmative Defense

Plaintiffs' claims may be barred or limited by Endorsement No. 18 in the Federal Policy, which defines Securities Loss to mean the amount any Insured Person becomes legally obligated to pay on account of a Securities Claim but excludes "any amount incurred by the Organization in connection with the investigation or evaluation of any Securities Claim or potential Securities Claim by or on behalf of the Organization."

### Sixteenth Affirmative Defense

Plaintiffs' claims may be barred or limited by Exclusion 5, as amended by Endorsement No. 5.b to the Federal Policy, which provides that the Company shall not be liable for Loss on account of any Claim made against any Insured Person

based upon, arising from, or in consequence of any dishonest, deliberately criminal, or deliberately fraudulent act or omission or any willful violation of any statue or regulation by such Insured person, provided, however, that this exclusion shall not apply unless it has been finally adjudicated that such Claim was brought about or contributed to by a dishonest, deliberately criminal or deliberately fraudulent act or omission or any willful violation of any statute or regulation by the Insured Person.

**Seventeenth Affirmative Defense**

Plaintiffs' claims may be limited by Endorsement No. 9 to the Federal Policy,

which includes an "Insurance Company E&O Exclusion," which states, in relevant part,

the following:

> The Company shall not be liable for Loss on account of any
> Claim based upon, arising from, or in consequence of:
>
> i.      any Insurance Policy issued by the Organization;
> *               *               *               *
> iii.     the refusal to issue or renew, or issuance or
> cancellation of any Insurance Policy by the Organization,
> *               *               *               *
> vi.     the handling by the Organization or any of its
> representatives of any claim or obligation arising out of any
> Insurance Policy issued by the Organization . . .
>
> However, this Exclusion shall not be applicable to any
> shareholder derivative or class action suit brought against
> the Insured Persons in connection with the failure to
> supervise any of the activities listed above.

**Eighteenth Affirmative Defense**

Plaintiffs' claims are barred or limited because the SEC settlement agreement

(Assurance of Discontinuance) expressly prohibits MBIA from seeking reimbursement

for amounts payable pursuant to the agreement.

**Nineteenth Affirmative Defense**

Plaintiffs' claims may be barred or limited because the Policy does not provide

coverage to the extent that a **Claim** or a **Securities Claim** is based upon, arises from, or

is in consequence of any **Organization** having gained in fact, if established by an

independent finding of fact, any profit or advantage to which it was not legally entitled.

### Twentieth Affirmative Defense

Plaintiffs' claims are barred or limited because Section 10 of the Federal Policy provides for allocation between covered Loss and uncovered loss.

### Twenty-first Affirmative Defense

The Complaint's claims may be barred or limited by the doctrines of unclean hands, estoppel, laches and/or waiver.

### Twenty-Second Affirmative Defense

ACE has no liability for Plaintiffs' attorneys' fees and costs in bringing this coverage action.

### Twenty-Third Affirmative Defense

ACE incorporates herein all applicable defenses asserted by the other Defendant, and ACE reserves its right to assert all of its defenses under all applicable policies, in equity and at law as to all matters that are subject to discovery in connection with the Complaint.

**WHEREFORE**, ACE requests that judgment be entered against Plaintiffs and that ACE be awarded its costs and attorneys' fees incurred herein.

## JURY DEMAND

ACE hereby demands a trial by jury on all issues so triable.


DRINKER BIDDLE & REATH LLP


Dated:  Washington, D.C.                    By:  ___ s/ Alan J. Joaquin ___
        July 8, 2008                                    Alan J. Joaquin
                                  1500 K. Street, N.W.
                                  Suite 1100
                                  Washington, D.C. 20005
                                  Tel: (202) 842-8800
                                  Fax: (202) 842-8465

                                  *Attorneys for Defendant ACE*
                                  *American Insurance Company*

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that the foregoing Defendant Ace American Insurance Company's Answer, Affirmative Defenses to the Amended Complaint and Jury Demand was delivered electronically by email and by ECF on this 8th day of July 2008 to:

Christine S. Davis
Robert F. Ruyak
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Avenue
North West
Washington, DC 20004
202 783 0800
Fax: 202 383 6610
Attorneys for Plaintiff MBIA

James Gerard McCarney
Howrey LLP (NYC)
153 East 53rd Street
New York, NY 10022
(212) 896-6500
Fax: (212) 896-6501
Email: mccarneyj@howrey.com
Attorneys for Plaintiff MBIA

Frank T. Spano
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
ftspano@hhlaw.com
Attorneys for Defendant:
Federal Insurance Company

                                     s/ Thuy Bui